[Civ. No. 8282.   Third Dist.   Apr. 21, 1953.]

JOHN MARKUS, Appellant, v. JUSTICE'S COURT OF LITTLE LAKE TOWNSHIP et al., Respondents.

Kasch & Cook for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondents.

VAN DYKE, P. J.—Appeal from a judgment of the Superior Court for Mendocino County denying petition for writs of mandate and prohibition which appellant asked be issued and directed to the Justice's Court of Little Lake Township, requiring that court to refrain from further proceedings in, and to expunge the existing record in, a proceeding therein in which appellant had been accused and convicted of violating section 5 of Mendocino County Ordinance No. 285 regarding the keeping and control of dogs. A complaint was filed in the said justice's court against appellant, charging violation of the referenced ordinance in that appellant had wilfully and unlawfully allowed a dog to run on the property of Elmer H. Brown and to kill one ewe and two lambs. Appellant pleaded guilty in the justice's court and was fined $50 and ordered to pay to Brown the value of the sheep killed. Not having complied therewith, appellant was threatened with process in enforcement of the judgment and thereupon petitioned the superior court for the aforesaid writs.

Appellant contends that the county ordinance was and is void for the reasons that: 1. It places unreasonable restrictions upon the ownership and possession of dogs in rural and sparsely inhabited areas; 2. It is so vague and uncertain as to be invalid in that the word "premises" on which dogs are required to be kept by the terms of the ordinance has no definite or ascertainable meaning; 3. The ordinance attempts to legislate in a field completely occupied by state statute. Appellant also contends that the complaint in the justice's court failed to state a cause of action.

In support of his claim that the ordinance places unreasonable restrictions upon the possession and ownership of dogs, appellant argues that Mendocino County is largely rural, mountainous in topography and sparsely inhabited, of which facts he urges this court to take notice. He asserts the county's 3,500 square miles of territory contains 40,000 inhabitants of whom about 13,000 reside within the four incorporated areas; that the county has but 5 per cent of its area under cultivation or within the incorporated areas; that half the total area is timberland and that aside from lumbering the main industry of the county is stock raising; that vast areas are unfenced

and that many of the inhabitants live in areas remote from areas containing any considerable density of population. The section of the ordinance for violation of which appellant was convicted reads as follows:

"It shall be unlawful and a misdemeanor for any person to cause or permit, or allow any dog or dogs, owned, harbored, controlled or kept by him, to roam or run or stray away from the premises where the same is or are owned, harbored or kept, at any time, except in the custody and control of the owner or some responsible person, thereunto by the owner duly authorized."

Referring to the well-known proclivity of dogs to roam the countryside, appellant argues that the effect of these ordinance provisions is to compel a dog owner to either keep his dog perpetually chained or kenneled or maintain a dog-proof fence about his property or area, or a dog attendant to be in charge of the dog at all times; and that except in a few incorporated areas within the county such restrictions are so unreasonable as to amount in practical effect to prohibiting the ownership of dogs if the owner is to have any assurance that he can avoid violating the law. As appellant puts it, "Even if dogs could read, they would be unable to comply with the law because so much of Mendocino County is not fenced, nor does it bear trespass signs."

These arguments are indeed most persuasive, for this ordinance does place such harsh restrictions upon the keeping and controlling of dogs that if it were in fact faithfully, rigorously and generally enforced against all residents of the county keeping and owning dogs, the probable result would be that dogs would largely disappear since people would not dare to keep them. ▮ But these arguments, forceful as they are, must be addressed to the legislative body that passed the ordinance, for the power of a court to strike down a law for unreasonableness is and ought to be severely limited. In truth, save where the quality of unreasonableness shows the violation of some constitutional right, the power is nonexistent. "The constitutional power and authority to enact a statute appearing, the question of its mere reasonableness or unreasonableness is for the legislature alone. If the legislature abuses its power—the power to make laws, and to judge of their necessity and reasonableness—the remedy lies, under our form of government, with the people, through the ballot-box; . . . or the right which the people have to change their form of government, whenever it becomes oppressive or fails to

afford that security for the rights of men which it was intended to provide. But when the legislature has spoken, the question before the court is not the propriety of the legislation, but its power to legislate. If the intention is clear, however unjust and absurd the consequences may be, it must prevail, unless it contravenes a constitutional provision, for it is obviously not the province of the court to approve good and condemn bad legislation." (5 Cal.Jur. "Constitutional Law," section 63, p. 636.)

As to the right to legislate it is now and for long has been well settled that legislative bodies have the power to impose restrictions on the rights of dog owners to allow their animals to run at large, the power generally being upheld as a valid exercise of the police power (49 A.L.R. Anno., p. 852); and this power we think exists even though it be exercised under conditions of sparsity of population as opposed to ordinances passed by municipalities where the population is dense. For example, stock raising is often an important industry in sparsely settled territory and the proclivity of roaming dogs to worry livestock and even to kill them is well known. Such stock often graze untended for long periods of time in remote areas and dogs can do great damage, yet remain undetected; the responsibility for the damage is often impossible to fix. The board of supervisors of the county had the power to legislate upon the subject matter and that being so it is not for courts to declare the legislation invalid because it appears to be unnecessarily severe.

Appellant contends that the ordinance in question is unconstitutional because the word "premises" as used therein is vague and uncertain, leaving the meaning of the ordinance to conjecture. This contention cannot be sustained. The section of the ordinance in question prohibits an owner allowing his dog to roam away from "the premises where the same is . . . kept." This is a sufficient description of the area to which the dogs are to be confined to enable any dog owner to understand that part of the law. If the owner lives on a farm then the farm becomes the premises where he keeps his dog. If he lives in a trailer on a rented space then the rented space and the trailer become the premises on which he must keep his dog. We think there is no lack of clarity in the terms of the ordinance.

And appellant contends that the ordinance conflicts with the state statute. (1 Deering's Gen. Laws, Act 384.) The state law makes unlawful the keeping of a dog over three

months old without placing upon it a substantial collar on which is fastened a metallic tag containing the name and address of the owner, or a tag issued by the authority of a county, city or other municipal corporation; it prohibits the running at large of dogs not wearing tags; it prohibits an owner's permitting a dog to run at large on any farm where livestock or domestic fowls are kept without the consent of the farm owner; it contains provisions for killing dogs found worrying livestock or poultry on lands not owned or possessed by the dog owner; it provides a proceeding whereby persons sustaining damage to livestock or poultry by dogs may have an action to recover their damages; it provides that on petition the board of supervisors of any county must provide for the issuance of dog tags and directs such boards without petition to provide for taking up and impounding and disposing of dogs found running at large in violation of the statute; and from the fees collected for tags and fines collected for violations it provides a fund to be known as a "live stock indemnity fund" which must be used in the enforcement of the statute and of ordinances passed pursuant thereto and in the payment of damages to owners of livestock killed by dogs.

An ordinance is void which prohibits the same acts which are forbidden by a state law to the extent of the duplication. (*People v. Commons*, 64 Cal.App.2d Supp. 925 [148 P.2d 724].; *In re Sic*, 73 Cal. 142 [14 P. 405]; *In re Mingo*, 190 Cal. 769. [214 P. 850]; *Pipoly v. Benson*, 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515].) An ordinance is to that extent void insofar as it prohibits what a state law authorizes. (*People v. Commons, supra*; *In re Iverson*, 199 Cal. 582, 587 [250 P. 681].) An ordinance is invalid if it invades a field already so fully occupied by state legislation that there is no room for local regulation, for then its provisions are deemed to conflict with the state law even though the particular regulation set forth in the ordinance does not directly duplicate or otherwise directly conflict with any express provision of the state law. (*People v. Commons, supra*; *Pipoly v. Benson, supra*; *Natural Milk Etc. Assn. v. City & County of San Francisco*, 20 Cal.2d 101, 109 [124 P.2d 25]; *Ex parte Daniels*, 183 Cal. 636, 643 [192 P. 442, 21 A.L.R. 1172].) Applying these general rules to the two enactments before us, we see at once that on the subject of dogs running at large the state statute prohibits such activity only as to untagged dogs, or to tagged dogs running upon "any farm whereon livestock or domestic fowls

are kept.'' But the ordinance absolutely prohibits dogs running at large off the premises where the same are kept. The ordinance greatly extends the statutory restriction. It is not, therefore, within the field of the extension, either a duplication of the state statute or in conflict therewith unless the state has fully occupied the field. This we think the state has not done. The content of the state statute makes this clear. Running at large is not forbidden except for dogs without tags, or on farms where livestock or domestic fowls are kept. These restrictions, though they may have been deemed adequate as statewide restrictions, clearly are so constructed as to leave to counties full right under the police power to declare additional restrictions deemed advisable to meet and control situations existing in the various counties. (It is not claimed by respondent, and we think could not be properly claimed, that regulating the care and control of dogs within the county was a municipal affair so that the county regulations would be superior to the provisions of the state statute if there was conflict between the two.) (Const., art. XI, § 6; *Ex parte Helm,* 143 Cal. 553 [77 P. 453].)

The power of the county therefore is limited only by the constitutional provision authorizing its legislative body to make and enforce within its boundaries such local regulations as would not be in conflict with the provisions of general law. (Const., art. XI, § 11.) Nor can it be said the statute expressly or impliedly makes lawful that which the ordinance prohibits. Its terms on this subject matter are entirely restrictive.

However, there is a conflict between the statute and the ordinance to this extent, that the statute expressly and the ordinance generally prohibits dog owners from permitting their dogs to roam upon farms whereon are being kept livestock and domestic fowls; and as to offenses coming within the statutory inhibition the ordinance may not operate. (*In re Sic, supra; In re Mingo, supra.*) The conflict here is more apparent than is usual because not only do the provisions overlap but the state law fixing the penalty at fine or imprisonment provides that all fines collected under its provisions shall be paid into a special fund and disbursed as directed by the statute. However, the foregoing considerations do not aid appellant, for it is not made to appear and does not appear from the charge that the crime to which he pleaded guilty was within the embrasure of the statute and therefore without the effective provisions of the ordinance.

Appellant contends that the complaint to which he pleaded guilty did not state a public offense in that it failed to allege that he had "owned, harbored, controlled or kept" the dog in question and in that it failed to allege that the particular dog roamed, ran or strayed away from the premises where kept. The record presents and of course could present in this proceeding no more than the form of the complaint and the question is therefore whether or not, though perhaps inartificially stated, the complaint met the fundamental requirements of such a charge. We hold that it did. It expressly charged a violation of section 5 of the ordinance committed by the defendant's having wilfully and unlawfully allowed a dog to run upon the property of Elmer H. Brown and kill sheep thereon. The essence of the charge was not the killing of the sheep but the allowing of the dog to run, that is, to roam, off the property where kept. ■ This is sufficiently stated by the statement that the dog was allowed to run on the property of other than the defendant. ■ Substantial statement of a violation of an ordinance is enough. (*People* v. *Smith,* 36 Cal. App.2d Supp. 748 [92 P.2d 1039].) ■■ The use in the pleadings of the word "allow" implies the charge that defendant was sufficiently in control, ownership or possession of the dog as to be chargeable with regulation of his conduct in accordance with the ordinance. The word is synonymous with "permit" (Webster's Int. Dict.), and both words when used in conjunction with a statute charging a duty to the owner of a dog to regulate his activities connote positive duty, failure to perform which will violate the ordinance. The plaintiff promptly pleaded guilty to the charge made and it is unlikely that he could have misunderstood the gravamen of the charge.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.