BRATTLE FILMS, INC. *vs.* COMMISSIONER OF PUBLIC SAFETY & another.

Middlesex.    May 5, 1955. — July 6, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Constitutional Law*, Freedom of speech, Freedom of the press.  *Lord's Day.    Public Entertainment.    Motion Picture.    Equity Pleading and Practice*, Declaratory proceeding.

A bill in equity stating a proper case for declaratory relief is not demurrable.  [59]

An exhibitor of motion pictures seeking to exhibit a certain picture in his theatre on Sunday was entitled to a declaratory decree that G. L. (Ter. Ed.) c. 136, § 4, as amended, requiring a municipal license and the approval of the commissioner of public safety for a "public entertainment" to be held on Sunday is void on its face as a prior restraint on freedom of speech and freedom of the press in violation of the First and Fourteenth Amendments to the Federal Constitution.  [60]

BILL IN EQUITY, filed in the Superior Court on May 27, 1954.

The suit was heard by *Cahill*, J., on demurrer.

*William C. Brewer, Jr.*, (*Joseph M. Koufman* with him,) for the plaintiff.

*Arnold H. Salisbury*, Assistant Attorney General, (*Joseph H. Elcock, Jr.*, Assistant Attorney General, with him,) for the defendants.

WILKINS, J.   The plaintiff, which is engaged in the business of exhibiting motion pictures, brings this bill in equity against the commissioner of public safety of the Commonwealth and the city manager of the city of Cambridge to obtain a binding declaration as to the plaintiff's right to exhibit on Sunday a certain motion picture film entitled

"Miss Julie." A demurrer to the bill was sustained, a final decree was entered dismissing the bill, and the plaintiff appealed.

Among the allegations of the bill are these. On three occasions the plaintiff applied to the defendant commissioner for his written approval, and to the defendant city manager for a license, to exhibit the film in its theatre in Cambridge on Sunday, and both applications were refused. The film has been shown in the theatre on weekdays, and "is not of such a character as to disturb the peace and quiet of the Lord's day or to interfere with its due observance." The refusal of the written approval and of the license "constitutes a prior restraint of the freedom and rights" of the plaintiff and is in violation of the First and Fourteenth Amendments to the Constitution of the United States and of art. 16 of the Declaration of Rights of the Constitution of this Commonwealth. Likewise repugnant to these constitutional provisions is G. L. (Ter. Ed.) c. 136, § 4,[1] in so far as it purports to authorize the commissioner to withhold written approval and the city manager to withhold a license.

The bill states a proper case for a binding declaration, and, in any event, the demurrer should not have been sustained. *Booker* v. *Woburn*, 325 Mass. 334, 335. *Burnes* v. *Metropolitan District Commission*, 325 Mass. 731, 733. *Foley* v. *Springfield*, 328 Mass. 59, 62–63. *Cohen* v. *Santoianni*, 330 Mass. 187, 189. *Stern* v. *Stern*, 330 Mass. 312, 318. *Zaltman* v. *Daris*, 331 Mass. 458, 462.

The material portions of G. L. (Ter. Ed.) c. 136, § 4, are: "the mayor of a city [2] . . . may, upon written application describing the proposed entertainment, grant, upon such terms or conditions as . . . [he] may prescribe, a license to hold on the Lord's day a public entertainment, in keep-

---

[1] Later amendments are not material. St. 1945, c. 575. St. 1953, c. 596. St. 1954, c. 303.

[2] The city of Cambridge is governed by Plan E, described in G. L. (Ter. Ed.) c. 43, §§ 93–116, inserted by St. 1938, c. 378, § 15, as amended. *Clements* v. *Treasurer of Cambridge*, 324 Mass. 73, 74. By c. 43, § 104, the city manager has all the powers, other than legislative, exercised by the mayor, common council, and other boards and committees, except the school committee.

ing with the character of the day and not inconsistent with its due observance . . . provided, that no such license shall . . . have effect unless the proposed entertainment shall . . . have been approved in writing by the commissioner of public safety as being in keeping with the character of the day and not inconsistent with its due observance." By § 3 of c. 136 a violation is subject to a criminal penalty of not more than $500.[1]

We think that § 4 is void on its face as a prior restraint on the freedom of speech and of the press guaranteed by the First and Fourteenth Amendments. That such would be the holding of the Supreme Court of the United States seems to follow from a series of decisions. In *Joseph Burstyn, Inc.* v. *Wilson*, 343 U. S. 495, 502, the court held that "expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments," thereby overruling *Mutual Film Corp.* v. *Industrial Commission of Ohio*, 236 U. S. 230. The *Burstyn* case also held that under the First and Fourteenth Amendments the State of New York could not ban a film as "sacrilegious" on the basis of a censor's conclusion made pursuant to statute (page 506). Similar results have been reached in even more recent cases. In *Gelling* v. *Texas*, 343 U. S. 960, there was held invalid a city ordinance which authorized a board of censors to deny a license for the showing of a motion picture which the board is "of the opinion" is "of such character as to be prejudicial to the best interests of the people of said city." In *Superior Films, Inc.* v. *Department of Education of Ohio*, 346 U. S. 587, and *Commercial Pictures Corp.* v. *Regents of the University of the State of New*

---

[1] "Whoever offers to view, sets up, establishes, maintains, or attempts to set up, establish or maintain, or promotes or assists in such attempt, or promotes, or aids, abets or participates in offering to view, setting up, establishing or maintaining any public entertainment on the Lord's day, except a concert of sacred music, or a free open air concert given as provided in the preceding section, unless such public entertainment shall be in keeping with the character of the day and not inconsistent with its due observance and duly licensed as provided in the following section, or whoever on the Lord's day acts as proprietor, manager or person in charge of a game, sport, play or public diversion, except a public entertainment licensed under the following section, a concert of sacred music, or a free open air concert given as aforesaid, shall be punished by a fine of not more than five hundred dollars."

*York,* 346 U. S. 587, two judgments of State courts of last resort were reversed without opinion on the authority of the *Burstyn* case. One concerned an Ohio statute which provided for the licensing of "only such films as are in the judgment and discretion of the board of censors of a moral, educational or amusing and harmless character." *Superior Films, Inc.* v. *Department of Education of Ohio,* 159 Ohio St. 315, 320. The other related to a New York statute providing that a motion picture shall not be licensed if it is "immoral . . . or is of such a character that its exhibition would tend to corrupt morals." *Commercial Pictures Corp.* v. *Regents of the University of the State of New York,* 305 N. Y. 336, 343. See *Central States Theatre Corp.* v. *Sar,* 245 Iowa, 1254, 1260–1261; *R. K. O. Radio Pictures, Inc.* v. *Department of Education of Ohio,* 162 Ohio St. 263.

That the present controversy concerns exhibitions on only one day a week, and that day Sunday, does not seem to us to alter the governing rules of law. It is unthinkable that there is a power, absent as to secular days, to require the submission to advance scrutiny by governmental authority of newspapers to be published on Sunday, of sermons to be preached on Sunday, or public addresses to be made on Sunday.

Whether § 4 is also void for indefiniteness under the due process clause of the Fourteenth Amendment need not be determined. In broad principle the present case resembles *Commonwealth* v. *Carpenter,* 325 Mass. 519, which was decided in large part (see page 521) on the authority of *Connally* v. *General Construction Co.* 269 U. S. 385, *Lanzetta* v. *New Jersey,* 306 U. S. 451, and *Winters* v. *New York,* 333 U. S. 507.

In the light of the controlling decisions of the Supreme Court of the United States, we forbear academic discussion of the Declaration of Rights of our own Constitution, which we in no sense intimate is less capable of protecting the essentials of freedom of speech or of the press. *Commonwealth* v. *Gilfedder,* 321 Mass. 335, 343.

We are not called upon to discuss *Commonwealth* v.

*McGann*, 213 Mass. 213, 215, which deals with a predecessor statute of G. L. (Ter. Ed.) c. 140, § 181.

The final decree below is reversed, and a new final decree is to be entered declaring that G. L. (Ter. Ed.) c. 136, § 4, as applied to the plaintiff in the circumstances set forth in the bill of complaint is unconstitutional and void.

*So ordered.*