161 Cal.App.2d Supp. 860 (1958)
THE PEOPLE, Respondent,
v.
ELEAZAR SMITH, Appellant.
California Court of Appeals. 
June 23, 1958.
 Brock, Easton, Fleishman & Rykoff for Appellant.
 Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.
 DAVID, J.
 The defendant Smith appeals from a judgment based upon his conviction under Los Angeles Municipal Code, (Ordinance No. 77,000 as amended) pursuant to the complaint which charged that he violated paragraph 2 of section 41.01.1 thereof, in that he "did wilfully and unlawfully ... have in his possession an obscene and indecent writing, book, pamphlet, picture, photograph and drawing, to wit: Sweeter Than Life, in a place of business where magazines, books, pamphlets, papers and pictures were sold and kept for sale."
 The ordinance provisions in question read in part as follows: "Sec. 41.01.1 Indecent Writings, Etc.--Possession Prohibited: "It shall be unlawful for any person to have in his possession any obscene or indecent writing, book, pamphlet, picture, photograph, drawing, ... in any of the following places:
 "1. In any school, school-grounds, public park or playground [161 Cal.App.2d Supp. 862] or in any public place, grounds, street or way within 300 yards of any school, park or playground;"
 "2. In any place of business where ice-cream, soft drinks, candy, food, school supplies, magazines, books, pamphlets, papers, pictures or postcards are sold or kept for sale;"
 "3. In any toilet or restroom open to the public;"
 "4. In any pool room or billiard parlor, or in any place where alcoholic liquor is sold or offered for sale to the public;"
 * * *""
 Appellant's contentions cannot be sustained:
 [1] (1) The ordinance does not violate the First Amendment of the United States Constitution. Under the California Penal Code, section 311, dealing with obscenity, the United States Supreme Court has held that "obscenity is not within the area of constitutionally protected speech or press." (Roth v. United States (1957), 354 U.S. 476 at 485 [77 S.Ct. 1304, 1 L.Ed.2d 1498].)
 [2] (2) The characterization as "obscene" is not too indefinite to constitute a valid standard. In the case last cited, the trial judge applied the test laid down in People v. Wepplo (1947), 78 Cal.App.2d Supp. 959 [178 P.2d 853], which was approved by the U.S. Supreme Court in the Roth case (354 U.S. at 489).
 (3) Under any test, the book concerned in this prosecution was properly held to be obscene by the trial court, and we share such a conclusion upon our independent view of the evidence, if that be necessary in view of the assertion of constitutional right, though such a right is clearly nonexistent. (Roth v. United States (1957), 354 U.S. 476, 485-486 [77 S.Ct. 1304, 1 L.Ed.2d 1498].) Obscenity is not constitutionally protected. The "community standard" is, as in other criminal matters, to be determined by the trier of the fact. (Parmelee v. United States (1940), 113 F.2d 729, 741.)
 The police power of the state in such matters is not restrained by the definitions applied by the federal courts to the federal question of admission of books to the country or to the mails. A national common- denominator of morality may be considerably less than that in a state, which has the right to set, and to adhere to, its own standards in such matters. (U.S. Const., Amend. X.) That any obscene book or picture may be popular is no ground for holding that it may not be suppressed, since that condition may be exactly the occasion for legislative action against it to protect the public morals. Such legislation preeminently falls within [161 Cal.App.2d Supp. 863] state police power. (Lawton v. Steele (1893), 152 U.S. 133 [14 S.Ct. 499, 38 L.Ed. 385].)
 We reach this conclusion, also, when we have considered the book as a whole, under tests that the appellant contends are applicable. There are obvious common-sense limits to the "over all" view. We are not persuaded that a bawdy house is any the less a brothel, because many of the rooms of the house may be occupied with dining and dancing, in view of what goes on in the bedrooms. A book is not necessarily clean or not obscene because some of the chapters or paragraphs leading to the bedroom, couch, summerhouse or other available place themselves do not describe the details of adulterous fornication nor rape. (Cf. Besig v. United States (1953), 208 F.2d 142, 146.)
 [3] (4) The defendant offered expert witnesses to testify what psychological effect the prurient material in question would have on a normal average person. In California, this is no more the subject of expert testimony than what the conduct of a reasonable and prudent person would be in a negligence action. This is for the trier of the fact. (People v. Wepplo, supra, 78 Cal.App.2d Supp. 959; cf. United States v. Kennerley (1913), 209 F. 119, 121). Nor was it error to exclude evidence as to the contents of other books, alleged to be no different or even more sexually titillating, on the theory that legislation is invalid which seeks to restrain that which is popular. Pornography has not been popular enough to induce the state and city legislators who represent the populace at large to change the legislative policies, or to redefine the common understanding of the meanings of well- established English words. The great quarrel in this field actually seems not to be with the definition of "obscenity" but with its application, to particular states of fact. We have no such difficulty in this case. We have found that the book in question is obscene, not merely that there is sufficient evidence to support the implied finding of the trial court to that effect, keeping in mind what we said in People v. Wepplo, supra (1947), 78 Cal.App.2d Supp. 959, 961, in which obscenity was defined in construing California Penal Code, section 311, subdivision 3.
 [4] (5) The Los Angeles city ordinance Number 77,000 (known as the Los Angeles Municipal Code) section 41.01.1, has the full force of a statute of the state within the limits of the city (Odd Fellows' Cemetery Assn. v. City & County of San Francisco (1903), 140 Cal. 226, 230 [73 P. 987]; Boyd [161 Cal.App.2d Supp. 864] v. City of Sierra Madre (1919), 41 Cal.App. 520 [183 P. 230]), except so far as it is "in conflict with general laws." (Cal. Const., art. XI, 11; Simpson v. City of Los Angeles (1953), 40 Cal.2d 271, 278 [253 P.2d 464], app. dis. 346 U.S. 802 [74 S.Ct. 37, 98 L.Ed. 333], rehearing den. 346 U.S. 880 [74 S.Ct. 118, 98 L.Ed. 387].)
 [5] In California, this police power of cities is one of the oldest municipal powers. California Constitution (1879) article XI, section 11, perpetuated the power that was granted in the earliest charters and general laws for organization of municipal corporations in California, repeated and applied many times before 1879. (For instance, Charter of Sacramento, Cal. Stats. 1850, p. 70, 5; idem, San Diego, p. 122, 5; idem, San Jose, p. 125, 5; idem, for incorporation of towns, pp. 128-129, 6; idem, for incorporation of cities, p. 87-88, 11.) In the 1879 Constitution, article XI related to local government, and the same section number 11, was retained, as formerly pertained to this power in the act for incorporation of cities. Before the Constitution of 1879, such power was conferred by the Legislature. Now, it is conferred by the Constitution itself. Prior to 1879, the numerous statutes and special charters gave full power to cities to pass ordinances "not repugnant ... to the laws of this State." Prior to 1879, the laws applying to cities were sometimes general and often special, but in 1879 by article IV, section 25, the Legislature was forbidden to pass "local or special laws. ... Creating offices, or prescribing the powers and duties of officers in counties, cities, cities and counties, townships, election or school districts."
 [6] Hence, article XI, section 11, vested and vests power in cities to pass police regulations "not in conflict with general laws." (Emphasis added.) Appellant asserts that there is such a conflict here between Penal Code, section 311, and the ordinance in question.
 Under the ordinance, it is illegal for a person to "have in his possession any obscene or indecent writing, book, pamphlet, picture, photograph, drawing, figure, ... of any kind in any of the following places: ... 2. In any place of business where ... school supplies, magazines, books, pamphlets, papers, pictures or postcards are sold or kept for sale; ..." (Municipal Code, 41.01.1.)
 Penal Code section 311 provides, so far as applicable: "Every person who wilfully and lewdly, either: ... 3. Writes, ... sells, distributes, keeps for sale, or exhibits any obscene [161 Cal.App.2d Supp. 865] or indecent writing, paper, or book; ... is guilty of a misdemeanor." Municipal Code, section 41.01.1, is more restrictive since it eliminates the requirement that a sale be made "lewdly" and in making it illegal to possess such material in such a place of business, irrespective of a lewd intent to sell it or to keep it for sale.
 The city ordinance is more restrictive than the Penal Code, section 311. Under the Penal Code section scienter is required. The defendant must possess the obscene material "wilfully and unlawfully" and with "lewd" intent. (People v. Wepplo, supra (1947), 78 Cal.App.2d Supp. 959 [178 P.2d 853]; Matter of Application of Ahart (1916), 172 Cal. 762 [159 P. 160].)
 There is no conflict. Wilful possession of an obscene book in a bookstore is not made an offense under the Penal Code provision, but it is under the city ordinance. Defendant could not have been prosecuted under Penal Code, section 311, for wilfully and unlawfully possessing the material in a bookstore without more. This fact alone demonstrates that the municipal ordinance is not in conflict with the general law. A prosecution may be had under an ordinance and a statute (cf. People v. Burkhart (1936), 5 Cal.2d 641 [55 P.2d 846]) where separate, distinct elements are involved in each. Local legislation must be in conflict with general law, before the constitutional grant of the police power to local bodies is inoperative and that vested in the Legislature is given priority. No permission from the Legislature itself to a city is necessary to the exercise of the local power under the Constitution. Legislative declarations of permission to legislate confer none, but only indicate that the Legislature in its own opinion has not purported to completely cover the subject matter. This relates to statutory construction, and not to power.
 In this case, the relation of the local to the state legislation is essentially the same as that in People v. Commons (1944), 64 Cal.App.2d Supp. 925 [148 P.2d 724], where possession of any dangerous or deadly weapon in an automobile was held to be effective, though the state Dangerous Weapons Control Law was less restrictive; People v. Burkhart, supra (1936), 5 Cal.2d 641 [55 P.2d 846], where the ordinance prohibited being drunk in an auto on the highway, and the state statute prohibited driving an automobile while intoxicated. In re Iverson (1926), 199 Cal. 582 [250 P. 681], where the state law permitted a druggist to fill a prescription for 16 ounces of intoxicating liquor, reduced by the Los Angeles ordinance [161 Cal.App.2d Supp. 866] to 8 ounces, and in which the doctrine of "more restrictive legislation" is considered and approved; In re Hoffman (1909), 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75], holding valid increased standards for milk solids in milk; Sternall v. Strand (1946), 76 Cal.App.2d 432, 434-435 [172 P.2d 921]; Remmer v. Municipal Court (1949), 90 Cal.App.2d 854, 856-858 [204 P.2d 92]; app. denied, 388 U.S. 806 [70 S.Ct. 80, 94 L.Ed. 488]; Markus v. Justice's Court (1953), 117 Cal.App.2d 391, 396-397 [255 P.2d 883]; Witt v. Klimm (1929), 97 Cal.App. 131, 134 [274 P. 1039], upholding additional regulation.
 The same conclusion has been reached by the courts of other states which have adopted the provisions or principles of California Constitution article XI, section 11. (Cf. Allen v. City of Bellingham (1917), 95 Wash. 12 [163 P. 18, 26], reviewing cases; City of Shreveport v. Provenza (1956), 231 La. 514 [91 So.2d 777]; Jones v. City of Chicago (1952), 348 Ill. App. 310 [108 N.E.2d 802, 805], ordinance raising amounts of insurance to be carried by taxicab operators above amounts set by state statute, the rule being stated "An ordinance, because of local conditions, may impose more rigorous or definite regulations under a proper delegation of power in addition to those imposed by the State"; State ex rel. Sutton v. Caldwell (1940), 195 La. 507 [197 So. 214, 218], citing Mann v. Scott (1919), 180 Cal. 550 [182 P. 281]; and In re Hoffman (1909), 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75]; City of Garden City v. Miller (1957), 181 Kan. 360 [311 P.2d 306, 311]; State ex rel. Woodruff v. Centanne (1956), 265 Ala. 35 [89 So.2d 570, 571]; Kansas City v. Henre (1915), 96 Kan. 794 [153 P. 548, 549], citing In re Hoffman, supra, 155 Cal. 114, 118.)
 Until one of our supreme courts declares otherwise, we are of the opinion that a book seller may be constitutionally prohibited from possessing or keeping an obscene book in his store and convicted of doing so even though it is not shown he knows its obscene character, nor that he intends its sale. He may not, with impunity, adopt as his rule of conduct: "Where ignorance is bliss, 'Tis folly to be wise."
 Those who are engaged in selling articles of a particular class to the public, have the first and best opportunity to know or be on notice of their characteristics, even though possession and not sale is involved. (Civ. Code, 18, 19.) Statutes commonly have forbidden the sale, offering for sale or possession of filthy articles, dangerous or deleterious to the [161 Cal.App.2d Supp. 867] public; or contrary to public morals; or otherwise unlawful; and have placed the duty to know their characteristics upon the possessor. (Cf. People v. Schwartz (1937), 28 Cal.App.2d Supp. 775 [70 P.2d 1017]; Escola v. Coca Cola Bottling Co. (1944), 24 Cal.2d 453, 463 [150 P.2d 436]; United States v. Dotterweich (1943), 320 U.S. 277 [64 S.Ct. 134, 88 L.Ed. 48]; note 152 A.L.R. 765.) The abatement of property used for an unlawful purpose does not depend on the knowledge of the owner. (People v. McCaddon (1920), 48 Cal.App. 790 [192 P. 325].) So with books.
 It is a matter of common knowledge that booksellers have possessed obscene books, kept in the back room or the locked case at their places of business. While not displayed for sale, the possession on the premises is validly considered as tending toward exhibition and sale, and hence possession is validly established as a separate offense, without showing of a lewd intent, as provided in Penal Code, section 311. "Possession" frequently is prohibited, without more, in penal statutes. Consult: fish and game, note, 125 A.L.R. 1200; unlawful possession of cane gun or bird net, Cal. Fish & Game Code, 2008-2009; idem, 8800-8807, beach nets; salmon, idem, 8212, 8215; narcotics and drugs in prison, Pen. Code, 4573.6; firearms, Pen. Code, 4574; counterfeit coin, Pen. Code, 479; deadly weapons, Stats. 1923, p. 696, 2 as amended; machine guns, Deering's Gen. Laws, Act. 1971, Stat. 1927, p. 938, as amended.
 The judgment is affirmed.
 Bishop, P. J., concurred.
 SWAIN, J.
 I dissent.
 The Legislature by Penal Code, section 311, subdivision 3, has occupied the field of selling and keeping for sale an obscene or indecent book. Therefore, under article XI, section 11 of the Constitution of California, that portion of section 41.01.1 of the Los Angeles Municipal Code (Ord. No. 77,000) is void which attempts to make it a misdemeanor for a person to have in his possession an obscene and indecent book in a place of business where books etc. are sold or kept for sale. The evidence is undisputed that Smith was the proprietor of a book store in the city of Los Angeles and that he sold and kept for sale the books in question at his store.
 The evidence proves a violation of the state law as well as a violation of the ordinance. The problem thus posed is by no [161 Cal.App.2d Supp. 868] means merely academic. A defendant is not guilty of violating Penal Code, section 311, unless he had knowledge of the character of the material. People v. Wepplo, supra (1947), 78 Cal.App.2d Supp. 959, 964 [178 P.2d 853]. To the word "knowledge" we would add "or notice," meaning thereby knowledge of facts which would have put a reasonable and prudent man on inquiry as to the contents of the materials. To appear profound, we refer to this knowledge or notice as "scienter." Under the city ordinance the prosecution does not have to prove scienter; under the Penal Code section, it does. This is true because the city ordinance uses the words "wilfully and unlawfully," whereas Penal Code, section 311, uses the words "wilfully and lewdly." This interpretation and distinction is pointed out in People v. Wepplo, supra (1947), 78 Cal.App.2d Supp. 959, 963 et seq. The state law has occupied the field of selling and keeping for sale, an obscene writing, paper or book. To sell it and keep it for sale, the defendant had the book in his possession at his store. The city cannot deprive him of the defense of "no scienter" by charging him with possession under the ordinance. People v. Commons, supra (1944), 64 Cal.App.2d Supp. 925 [148 P.2d 724]; People v. Webb (1958), 158 Cal.App.2d 537 [323 P.2d 141]; the complaint did not state any violation of Penal Code, section 311, for it failed to charge that the defendant sold or offered for sale the book and magazine lewdly. In re Correa (1918), 36 Cal.App. 512, 513 [172 P. 615].
 It is true as stated in the majority opinion that there is no declaration by the Legislature that it purports to cover the field. Such a declaration is not indispensable. The law as to occupation of the field by the state is well stated in 28 Opinions Attorney General 192 as follows:
 "Where the State statute expressly sets forth an intention to completely occupy the whole field of regulation of the subject matter and actually implements such intention by providing for such regulation, local regulation of the same subject matter is prohibited (Pipoly v. Benson, 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515]). On the other hand, the State statute may expressly provide that local regulations may supplement the general law. In such cases reasonable local ordinances imposing supplementary requirements may be enacted (Natural Milk Producers Assn. v. City & County of San Francisco, 20 Cal.2d 101, 110-111 [124 P.2d 25]; In re Iverson, 199 Cal. 582, 586-588 [250 P. 681])."
 "If the State statute contains no outright declaration of [161 Cal.App.2d Supp. 869] intention with respect to local regulation, the determination 'of the question whether the Legislature has undertaken to occupy exclusively a given field of legislation depends upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate' (Tolman v. Underhill, 39 Cal.2d 708, 712 [249 P.2d 280])."
 The question in Tolman v. Underhill, supra, was whether the Regents of the University of California could require from faculty members a more restrictive oath than that required by the state law in Government Code, sections 3100-3109. The court held they could not.
 In Bowen v. County of Los Angeles (1952), 39 Cal.2d 714 [249 P.2d 285], the court held that the state had occupied the same field to the exclusion of an oath required by order of the Board of Supervisors.
 It is obvious from a reading of Penal Code, section 311, subdivision 3, and the use of "lewdly" therein that the Legislature intended to give all proprietors of book stores throughout the State protection of the scienter rule. This is a wise and just provision because those proprietors customarily buy books from advertisements sent out by the publishers. Such dealers order books without an opportunity to read them in advance. I would reverse the judgment.