Mosey Cafe, Inc. *vs.* Mayor of Boston & others.

Suffolk. October 7, 1958. — December 5, 1958.

Present: Wilkins, C.J., Ronan, Spalding, Counihan, & Cutter, JJ.

License. Restaurant. Public Entertainment. Lord's Day. Constitutional Law, Freedom of speech, Freedom of the press, Public entertainment, Police power, Equal protection of laws. Jurisdiction, Federal field.

G. L. c. 136, § 4, as amended through St. 1957, c. 300, requires one proposing to furnish on the Lord's day a public entertainment by the use of television or radio sets to obtain a license therefor from the municipal licensing authority on the same basis as a license to furnish entertainment by such means on a weekday; and to obtain a license for a public entertainment on the Lord's day by the use of a "juke box" subject to the requirement that the activity itself, without regard to the content of the records to be played in the "juke box," be "in keeping with the character of the day and not inconsistent with its due observance" and be approved as such by the commissioner of public safety. [210–211]

G. L. c. 136, § 4, as amended through St. 1957, c. 300, classifying public entertainment held on the Lord's day and making differing requirements for the various types of entertainment with respect to obtaining licenses required thereby does not deny equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. [211]

G. L. c. 136, § 4, as amended through St. 1957, c. 300, is intended to preserve public order in public entertainments held on the Lord's day through licensing of the entertainment furnished, and does not impose any prior restraint on the content of the entertainment nor violate the constitutional guaranties of freedom of speech and freedom of the press, nor fail to establish adequate standards for the guidance of the licensing authorities, nor regulate in a field in which Congress has taken exclusive charge; and is not unconstitutional or void as applied to a restaurant operator proposing to furnish entertainment to customers on the Lord's day through the use of television and radio sets and a "juke box" maintained at his restaurant. [212]

Bill in equity, filed in the Superior Court on July 25, 1958.

The suit was reported by *Morton*, J.

*Hirsh Freed*, (*Arthur Sherman & Herbert Baer* with him,) for the plaintiff.

*Joseph H. Elcock, Jr.,* Assistant Attorney General, for the defendant Commissioner of Public Safety.

*William H. Kerr,* for the defendant Mayor of Boston and another.

WILKINS, C.J.   This bill in equity for a declaratory decree under G. L. c. 231A is reserved and reported without decision upon the pleadings and an agreement as to all the material facts.   G. L. c. 214, § 31.   This case is complementary to *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston, ante,* 199, which deals with licensing problems on weekdays whereas this case deals with similar problems on the Lord's day.

The issues are whether G. L. c. 136, § 4, and Revised Ordinances of Boston (1947) c. 40A, § 1, cl. 298, are inapplicable or void as to the plaintiff in so far as they purport to impose licensing requirements and the payment of license and approval fees for furnishing on the Lord's day public "musical entertainment provided by mechanical or electrical means" through the use of "juke boxes," television, or radio.   The mayor, the city, and the commissioner of public safety of the Commonwealth are parties defendant.

Many facts are the same as in the other case, to which we refer.   The plaintiff, operator of the "Ball and Bat Cafe" in Boston, is licensed by the licensing board for the city of Boston as a common victualler under G. L. c. 140, § 2, and as a common victualler has been further licensed by the board under G. L. c. 138, § 12, as amended, to sell, on all days of the week, all alcoholic beverages for consumption on its premises.

The plaintiff contends that it has the right to furnish to customers, at lawful times and in a proper manner and in compliance with all other pertinent laws, public entertainment on the Lord's day through the use of television, radio, and "music provided by mechanical or electrical means" without applying for any license or approval in writing under G. L. c. 136, § 4, and without paying any fee under § 4 or under cl. 298 of the ordinance.

General Laws c. 136, § 4, reads: ". . . the mayor of a

city . . . may, upon written application describing the proposed entertainment, grant, upon such terms or conditions as . . . [he] may prescribe, a license to hold on the Lord's day a public entertainment, including musical entertainment provided by mechanical or electrical means, in keeping with the character of the day and not inconsistent with its due observance, whether or not admission is to be obtained upon payment of money or other valuable consideration, *and, if the proposed entertainment described in the application is solely* . . . for the benefit of patrons in a public dining room or *for the use of television, the use of radio, or musical entertainment provided by mechanical or electrical means, the mayor* . . . *may grant an annual license therefor;*[1] provided, that no such license shall be granted to have effect before one o'clock in the afternoon, nor shall it have effect unless the proposed entertainment shall have been approved in writing by the commissioner of public safety as being in keeping with the character of the day and not inconsistent with its due observance. . . . The foregoing provisions, insofar as they authorize any person to refuse to grant, or to suspend, revoke or annul a license upon the ground that the proposed entertainment is not in keeping with the character of the Lord's day or not consistent with its due observance, and insofar as they require written approval of the proposed entertainment by said commissioner, shall not apply to any person making an application for a license to exhibit motion pictures or for the use of radio or television on said day, nor to any license issued upon such application."[2]

Revised Ordinances of Boston (1947) c. 40A,[3] § 1, purports to fix fees and charges under St. 1949, c. 222, and cl. 298, entitled "Sunday Entertainment License," which need not

---

[1] Words in supplied italics were inserted by St. 1954, c. 303. The phrase "for the benefit of patrons in a public dining room" was inserted by St. 1957, c. 300.

[2] The last sentence was added by St. 1955, c. 742, subsequent to the decisions in *Brattle Films, Inc.* v. *Commissioner of Pub. Safety,* 333 Mass. 58, and *Times Film Corp.* v. *Commissioner of Pub. Safety,* 333 Mass. 62.

[3] Effective December 1, 1956.—REPORTER.

be quoted at length, fixes fees for licenses granted by the mayor under G. L. c. 136, § 4.

The mayor in issuing annual licenses under G. L. c. 136, § 4, as amended, has treated the year as commencing with the date of the license.

In the years 1953 to 1957, inclusive, the plaintiff applied to the mayor, who granted, upon payment in each of those years of a fee of $50, an annual "Sunday Entertainment License" to hold on Sundays a public entertainment through the use of television, radio, and music provided by "mechanical or electrical means." At the time of the filing of the bill, the last such license issued to the plaintiff covered the twelve month period ending September 30, 1958.

In the years 1953 to 1957, inclusive, the plaintiff applied to the commissioner for his approval in writing under G. L. c. 136, § 4, as amended, "as being in keeping with the character of the day and not inconsistent with its due observance," of the use of "musical entertainment provided by mechanical or electrical means," other than by television or radio, proposed to be furnished under the plaintiff's annual "Sunday Entertainment License." The plaintiff paid in connection with each application a fee of $50. In granting approval the commissioner ascertained that the proposed entertainment was to be provided by a coin-operated "juke box." He was not so requested and did not in fact pass upon the contents of any records to be played.

Chapter 136, § 4, as we construe it, requires that the plaintiff obtain a Sunday license to hold a public entertainment by the use of television, radio, or "juke box." Television and radio are expressly exempt (1) from the granting of a license by the mayor tested by the entertainment being "in keeping with the character of the Lord's day" or "consistent with its due observance"; and (2) from the written approval of the commissioner. But as § 4 is not wholly repealed as to television and radio, the Legislature must have contemplated that a license for those types of entertainment still must be obtained on the same basis as every day licenses. This view is confirmed by an examina-

tion of G. L. c. 136, § 3, which imposes a fine for maintaining any public entertainment on the Lord's day without a license under § 4, or under § 2 which is not here applicable.

The operation of the plaintiff's "juke box" is alone affected by the approval requirement and the provision for the granting of a license "in keeping with the character of the Lord's day" or "consistent with its due observance." If there are kept in mind the nature of the "juke box" and the number of records which must be used in the course of a year, § 4, rightly construed as to "juke boxes," cannot be construed to require more than an approval of the activity as such without relation to the content of the records which from time to time are in it available to be played. The practice envisioned as to entertainment by "juke box" differs substantially from the approval of a specific film which was the subject considered in *Brattle Films, Inc.* v. *Commissioner of Pub. Safety,* 333 Mass. 58. The plaintiff here, unlike the plaintiff in that case, has been refused no license. Section 4 is predicated "upon written application describing the proposed entertainment." Obviously in the case of television, radio, or a "juke box," nothing more than a statement of the type of entertainment is contemplated or could be given, particularly in an application for an annual license.

The plaintiff, without citation of authority, briefly contends that § 4 unreasonably discriminates (1) against television, radio, and recorded music by setting these types of entertainment apart from other media of communication, such as newspapers; (2) between phonographs on the one hand and radio and television on the other; (3) between motion pictures and "musical entertainment provided by mechanical or electrical means"; and (4) between recorded music on the one hand and motion pictures, television, and radio on the other hand, by retaining for the former, and by eliminating for the latter, the standard of "in keeping with the character of the day and not inconsistent with its due observance." We perceive no violation of the Fourteenth Amendment to the Constitution of the United States.

We believe that the respective types of entertainment are such as to permit reasonable classification in the manner provided in the statute.

Chapter 136, § 4, and cl. 298 of the ordinance are not unconstitutional in the other respects urged for the reasons more fully set forth in *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston, ante,* 199. No censorship is authorized. The licensing authority cannot become a censor. He is not without standards for the granting or denial of a license. In his quasi judicial capacity he must act reasonably and not whimsically. His duty includes action for the preservation of public order in public entertainment, a function of which Congress has not taken exclusive charge.

The plaintiff contends that if the effect of c. 136, § 4, as amended by St. 1955, c. 742, is to make mandatory the granting of a license for the use of television or radio, the fee would be an illegal exaction. No authority is cited. Since we do not so construe the statute, and since it would in any event apply to the use of the "juke box," we need not consider the question.

A final decree is to be entered declaring that upon the agreed facts G. L. c. 136, § 4, and Revised Ordinances of Boston (1947) c. 40A, § 1, cl. 298, are not unconstitutional or void as applied to the plaintiff.

*So ordered.*