**PARAMOUNT FILM DISTRIBUTING CORPORATION, a Delaware corporation, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corporation, Richard J. Daley, and Timothy J. O'Connor, Defendants.**

No. 58 C 437.

United States District Court
N. D. Illinois, E. D.
March 24, 1959.

Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for plaintiff.

John C. Melaniphy, Corp. Counsel, Chicago, Ill., for defendant.

SULLIVAN, Chief Judge.

The plaintiff, Paramount Film Distributing Corporation, a Delaware corporation ("Paramount") is the licensed distributor of a motion picture film called "Desire Under the Elms"; defendants are the City of Chicago and its Mayor and Police Commissioner. Plaintiff complains that defendants have granted a permit to show "Desire Under the Elms" only to persons over twenty-one years of

age and requests an injunction restraining defendants from interfering with its general exhibition.

Plaintiff was required to apply for a permit to show the film by the Municipal Code of Chicago which provides that it is unlawful for anyone to exhibit a motion picture in the City of Chicago without "first having secured a permit therefor from the Commissioner of Police". (Section 155–2.) The Code further provides (Section 155–4) that such a permit shall be granted unless the picture is (among other qualities) "immoral or obscene". However, if the picture "tends toward creating a harmful impression on the minds of children, where such tendency as to the minds of adults would not exist", a limited permit may be granted allowing the exhibition of the picture "to persons over the age of twenty-one years" (Section 155–5). In the present instance, action was taken under the latter section and a restricted permit granted on the grounds that the picture was unfit for children.[1]

These facts are admitted by the pleadings and by various exhibits. The plaintiff contends that they are sufficient basis for a ruling on Counts I and II of the

Complaint and has moved for a summary judgment on that basis (Rule 56, F.R. Civ.P. 28 U.S.C.A.). Those Counts attack the Code section involved as "an infringement and denial by prior restraint of the plaintiff's constitutional right to freedom of expression guaranteed by the First and Fourteenth Amendments to the Constitution".

 Like any other censorship statute this one must be approached with a caution dictated by the fact that it is a patent invasion of the right to freedom of speech guaranteed by the First Amendment.[2] The Supreme Court "recognized many years ago that such a previous restraint is a form of infringement upon freedom of expression to be especially condemned."[3] Courts have accordingly been much more lenient in considering statutes that punish for past acts than when faced with those that attempt a restraint on future conduct. In the matter of statutes which deal with the problem of the dissemination of obscene material, statutes providing criminal penalties have been preferred to those seeking to correct the danger by censorship.[4] And this distinction has been emphasized by the Supreme Court.[5]

1. Although, Section 155–5 has not been directly considered by the Courts, the general censorship provisions have an inconclusive history in the Federal Courts. In Times Film Corporation v. City of Chicago, the Seventh Circuit held them constitutional in a full opinion (244 F. 2d 432 (1957)) which was reversed in a brief *per curiam* opinion by the Supreme Court (355 U.S. 35, 78 S.Ct. 115, 2 L.Ed. 2d 72 (1957)). The effect of that reversal will not be tested in that case, since on its return here it was dismissed for want of prosecution (No. 55 C 1006; November 3, 1958). Cf. R.K.O. Radio Pictures, Inc. v. Department of Education, 1954, 162 Ohio St. 263, 122 N.E.2d 769. See also American Civil Liberties Union v. City of Chicago, 1954, 3 Ill.2d 334, 121 N.E.2d 585, appeal dismissed for lack of a final judgment (348 U.S. 979, 75 S.Ct. 572, 99 L.Ed. 839 (1955)).

2. Staub v. City of Baxley, 1958, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302. For a review of the authorities see Adams v. Hinkle, 1958, 51 Wash.2d 763, 322 P.2d 844.

3. Joseph Burstyn, Inc. v. Wilson, 1951, 343 U.S. 495, 503, 72 S.Ct. 777, 781, 96 L.Ed. 1098.

4. Compare such censorship cases as: Brattle Films, Inc. v. Commissioner of Public Safety, 1955, 333 Mass. 58, 127 N.E.2d 891; R.K.O. Radio Pictures, Inc. v. Department of Education, supra, note 1; and Hallmark Productions Inc. v. Carroll, 1956, 384 Pa. 348, 121 A.2d 584 with People v. Smith, 1958, 161 Cal.App. 2d Supp. 860, 327 P.2d 636, and Adams Newark Theatre Co. v. City of Newark, 1956, 22 N.J. 472, 126 A.2d 340, which dealt with criminal penalties.

5. Joseph Burstyn, Inc. v. Wilson, supra, note 1 at page 503, of 343 U.S., at page 781 of 72 S.Ct. Note also that in both Times Film Corporation v. City of Chicago, supra, note 1, and One, Inc. v. Olesen, 1958, 355 U.S. 371, 78 S.Ct. 364, 2 L. Ed.2d 352, holding invalid the exclusion from the mails of a nudist magazine, the Court referred to Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498. Roth held that a criminal stat-

■ The basic question of whether or not restraint in the form of a clearly drawn and precise statute forbidding the exhibition of "obscene" motion pictures would be constitutional has not been directly decided. A ruling on that point was expressly shunned by the Supreme Court in the original motion picture case,[6] and the gap has never been filled.[7] What *has* been decided is that a censorship statute is unconstitutional if it is framed in terms so vague as not to give the censors a rational guide to their decisions.[8] The Court has found it unnecessary to go further than this since it has held that all the statutes it has considered are defective for this reason.[9]

This case must be resolved in the same way. Section 155–5 of the Chicago Municipal Code reads:

"In all cases where a permit for the exhibition of a picture or series of pictures has been refused under the provisions of the preceding section because the same *tends towards creating a harmful impression on the minds of children, where such tendency as to the minds of adults would not exist if exhibited only to persons of mature age,* the commissioner of police may grant a special permit limiting the exhibition of such pictures or series of pictures *to persons over the age of twenty-one years;* provided, such picture or pictures are not of such character as to tend to create contempt or hatred for any class of law abiding citizens."

The "preceding section" referred to is the more general one that directs refusal of a permit if a picture is

" * * * immoral or obscene, or portrays depravity, criminality, or lack of virtue of a class of citizens of any race, color, creed, or religion and exposes them to contempt, derision, or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching, or burning of a human being."

Reading the two sections together as directed by Section 155–5, apparently a limited permit should be granted if a picture is "obscene or immoral" but only so far as persons under twenty-one years of age are concerned. This is an evident contradiction in sense. Assuming for the moment (without deciding) that the words "obscene and immoral" have a definite and clear meaning, it is apparent that they express absolute concepts. A picture is either "obscene" ("offensive to taste; foul; loathsome") or it is not. And this is true of the other standards mentioned in Section 155–4. For example, a picture either does or does not "portray lack of virtue of a class of citizens of any race, color, creed or religion". None of these criteria can change with the age of the beholder. To say, as the Ordinance does, that a thing may be "immoral" so far as one group of persons is concerned does violence to the English language.

Counsel for the City of Chicago read the section to require a separate standard and to provide for a limited permit

---

ute proscribing selling or mailing "obscene" material was constitutional. See separate opinion of Judge Dye in Kingsley International Pictures Corporation v. Regents, 1958, 4 N.Y.2d 349, 175 N.Y.S. 2d 39, 151 N.E.2d 197, appeal pending United States Supreme Court, 358 U.S. 897, 79 S.Ct. 221, 3 L.Ed.2d 147. See also Capitol Enterprises, Inc. v. City of Chicago, Seventh Circuit, 260 F.2d 670.

6. Joseph Burstyn, Inc. v. Wilson, supra, note 3.

7. "The area of permissible prior restraint in this field remains somewhat cloudy". Kingsley International Pictures Corp. v. City of Providence, D.C.R.I., 1958, 166 F.Supp. 456, 461.

8. Joseph Burstyn, Inc. v. Wilson, supra, note 3.

9. W. L. Gelling v. State of Texas, 1952, 343 U.S. 960, 72 S.Ct. 1002, 96 L.Ed. 1359; Superior Films, Inc. v. Department of Education, 1954, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329; Holmby Productions, Inc. v. Vaughn, 1955, 350 U.S. 870, 76 S.Ct. 117, 100 L.Ed. 770.

in the case of any film that "tends to create a harmful impression on the minds of children", and "children", of course, means anyone under twenty-one years of age. Thus interpreted it is hopelessly indefinite. The word "tend" ("to direct one's course in a certain direction") implies that the film may merely approach the harmful. Nor does the word "impression" ("an indistinct or indefinite notion, remembrance, belief, or opinion") clarify the situation. Finally, the word "children" in connection with age limit of twenty-one years adds to the confusion. A "child", according to Webster, is "a young person, especially one between infancy and youth; one who exhibits the characteristics of a very young person, as innocence, obedience, trust, etc." Few persons of just under twenty-one years of age would meet this description.

The ordinance, then, permits a limited license when a film approaches producing a harmful notion in the mind of anyone from one to twenty-one years of age. Certainly, this is an insufficient guide to either the censors or those who produce motion pictures. Section 155-5 is invalid for this reason.[10]

This section is invalid on another ground as well. Even if clearly drawn, it would be invalidated by the age limit of twenty-one years. A censorship statute is necessarily an invasion of the First Amendment right to freedom of expression. Although the City may under its police power limit that right to prevent an evil, any restrictive action must be reasonable, not capricious.[11] *Assuming without deciding* that the City might correct the evil of exhibiting films unfit for "children" the present section is unsuitable for the purpose. Under it, a twenty year old, married service man would be prevented from seeing a film that might not be suitable for a girl of

twelve. As Justice Frankfurter remarked in a similar situation, "Surely, this is to burn the house to roast the pig".[12] As in the case just cited, the remedy is not appropriate for the end at which it is presumably aimed, and is an invalid exercise of police power.

The plaintiff's motion for summary judgment will be granted for the reason that Section 155-5 is unconstitutional and void. Counsel will present a form of order in five days.

---

10. See the cases cited in footnotes 8 and 9, supra, for the language of comparable statutes.

11. Nashville, Chattanooga & St. Louis Railway v. Walters, 1935, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949.

12. Butler v. State of Michigan, 1957, 352 U.S. 380, 383, 77 S.Ct. 524, 526, 1 L.Ed. 2d 412.