**Robert TAVERNIER, Plaintiff,**

v.

**WEYERHAEUSER COMPANY, a corporation, Defendant.**

**Civ. No. 61–120.**

United States District Court
D. Oregon.

Dec. 16, 1963.

Garry Kahn, Pozzi, Levin & Wilson, Portland, Or., for plaintiff.

Gordon Moore, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

KILKENNY, District Judge.

On a jury trial, a verdict was returned in favor of defendant. During the course of the trial, the Court rejected an offer in evidence of the hospital record of the plaintiff in a Rapid City, South Dakota, hospital. The record included, among other things, a Roentgenological Report [1] on a myelogram performed by a doctor in that city.

Plaintiff, on his motion for a new trial, argues that the Court erred in refusing to admit the record in evidence, and, in support of his position cites, among others, Medina v. Erickson, 226 F.2d 475 (9 Cir. 1955). These cases do not support the proposition that a doctor's "impression" as distinguished from his "opinion" or "diagnosis" is admissible as part of a hospital record. An impression does not rise to the dignity of an opinion. State v. Krug, 12 Wash. 288, 41 P. 126, 130, 131. At most it is an indistinct or indefinite notation. Paramount Film Distributing Corporation v. City of Chicago (D.C.Ill.) 172 F.Supp.

69; N. L. R. B. v. Walton Manufacturing Co., 286 F.2d 16, 21 (5 Cir. 1961).

Webster, 2d Edition, New Collegiate Dictionary, defines impression as an "indistinct or indefinite notion, resemblance, belief, or opinion".

Since the other entries were covered by testimony in open Court, the admission of such a record would be in the sound discretion of the Court. Bertanzetti v. Pennsylvania Ry. Co., 278 F.2d 690 (3 Cir. 1960).

The Motion for a new trial must be denied.

It is so ordered.

1.  *   *   *   *   *

"Myelogram: After pantopaque was introduced into the subarachnoid space of the lumbar spine a defect was noted at the L 4,5 level. Some opaque remained above this defect below the needle point. With the opaque in the caudal sac, no deformity was noted but as the pantopaque flowed cephlad, prominent bilateral defects at the L 4,5 level were again evident. This was also noted as the pantopaque passed caudally. The upper lumbar interspaces were not unusual.

Spot films show this defect and it appears to be somewhat more marked on the left side than on the right but is present on both sides.

Impression: Ruptured nucleus pulposus at the L 4,5, level."