**Debra P. ROOD, Plaintiff,**

v.

**UMATILLA COUNTY and Heather Elizabeth Luxton, Defendants.**

**No. 06–CV–346–SU.**

United States District Court, D. Oregon.

Nov. 20, 2007.

---

David H. Black, HR Juris, PC, Clackamas, OR, for Plaintiff.

Karen M. O'Kasey, Hoffman Hart & Wagner, LLP, Portland, OR, for Defendants.

## ORDER

BROWN, District Judge.

Magistrate Judge Patricia Sullivan issued Findings and Recommendation (# 46) on September 4, 2007, in which she recommended the Court grant in part and deny in part Defendants' Motion for Summary Judgment (# 27) and Defendants' Motion to Strike (# 38). Defendants filed timely Objections to the Findings and Recommendation only as to the recommendation that the Court grant in part and deny in part Defendants' Motion for Summary Judgment. The matter is now before this

Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

 When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Bernhardt,* 840 F.2d 1441, 1444 (9th Cir.1988); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

This Court has carefully considered the Objections of Defendants as to whether Plaintiff had a disability that qualified her for protection under the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and whether Defendants denied or interfered with Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2615(a)(1). The Court concludes Defendants do not provide a basis to modify the Findings and Recommendation. The Court also has reviewed *de novo* the pertinent portions of the record and does not find any error in the Magistrate Judge's Findings and Recommendation.

Defendants did not object to the Magistrate Judge's Findings and Recommendation that the Court grant in part and deny in part Defendants' Motion to Strike. When there are not any objections to the Magistrate Judge's Findings and Recommendation, this Court is relieved of its obligation to review the record *de novo. See Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983). *See also Lorin Corp. v. Goto & Co.,* 700 F.2d 1202, 1206 (8th Cir.1983). The Court, therefore, has reviewed *de novo* the legal principles related to this portion of the Findings and Recommendation and does not find any error.

## CONCLUSION

The Court **ADOPTS** Magistrate Judge Sullivan's Findings and Recommendation (# 46) and, therefore, **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (# 27) and Defendants' Motion to Strike (# 38).

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

SULLIVAN, United States Magistrate Judge.

Plaintiff Debra P. Rood brings this action against defendants Umatilla County (the County), plaintiff's former employer, and Heather Elizabeth Luxton, plaintiff's former supervisor. Plaintiff claims that defendants violated her First Amendment rights under 42 U.S.C. § 1983. Plaintiff also claims that the County violated the Americans with Disabilities Act (ADA) by failing to accommodate her disability, and by creating a hostile work environment because of her request for accommodation. Plaintiff also alleges that the County unlawfully denied her request for medical leave, and constructively terminated her because of her request for leave under the Family Medical Leave Act (FMLA).

Defendants move for summary judgment against all of plaintiff's claims. Defendants also move to strike evidence submitted by plaintiff in opposition to the summary judgment motion.

I recommend granting defendants' motion for summary judgment in part and denying it in part, as explained below. I also grant defendants' motion to strike in part and deny it in part.

## SUMMARY OF FACTS

Plaintiff was employed as a mental health counselor by Umatilla County Mental Health from September, 2002, until March 16, 2005. Her office was in Milton–

Freewater, Oregon, approximately 35 miles from the Umatilla County Mental Health office in Pendleton, Oregon. Defendant Luxton was plaintiff's acting supervisor in December, 2004, and became her supervisor in January, 2005, until plaintiff left employment with the County on March 16, 2005. Luxton worked in the County's Pendleton office.

Plaintiff was in a work-related motor vehicle accident on September 17, 2004. Dr. Michael Breland treated plaintiff for back injuries related to the accident beginning in December, 2004. Plaintiff did not request any accommodation at work from September, 2004, through December, 2004, as a result of the accident. In January, 2005, plaintiff was driving from Milton–Freewater to Pendleton two times a week for meetings. In February, 2005, Dr. Breland placed restrictions on plaintiff's activities because of her back problems. From January, 2005, until plaintiff left her position with the County on March 16, 2005, plaintiff drove to Pendleton no more than two times per week. This conformed to Dr. Breland's recommendation that plaintiff's driving to Pendleton be limited for at least two months. Dr. Breland suggested that plaintiff participate by telephone in the meetings in Pendleton. However, when plaintiff requested the telephone conferences, they did not occur.

Plaintiff requested time off for physical therapy appointments to treat her back. Plaintiff did not specifically request leave under the Family Medical Leave Act. However, plaintiff filled out forms for leave that were provided for her by the County. Plaintiff requested leave on January 3, 2005, to go to a physical therapy appointment scheduled for January 4, 2005. Luxton denied this request. Plaintiff requested leave for medical appointments twice in February, 2005. The requests were submitted to Luxton who did not specifically approve or disapprove the requests but did not respond to them. Plaintiff missed those appointments.

In November, 2004, plaintiff spoke to Claire Buckley at the Psychiatric Security Review Board (PSRB) regarding a client of the PSRB who was being relocated. Plaintiff admits that this report was part of her duties as a PSRB case manager. In January, 2005, plaintiff received a "letter of concern" from Luxton regarding plaintiff's handling of certain matters concerning clients that were contrary to Luxton's instructions and constituted "insubordination." O'Kasey Aff., Ex. 113. It is not clear that the letter was related to plaintiff's November, 2004, contact with PSRB.

In early March, 2005, plaintiff sent an email to DeAnn Carr at Greater Oregon Behavioral Health, Inc. (GOBHI). GOBHI oversaw and certified mental health programs on contract with the State of Oregon. The email expressed plaintiff's concerns about Luxton's policy and approach in handling clients. Specifically, plaintiff complained about Luxton's approach to "transitioning" clients from one case worker to another, and Luxton's supervision of her and other clinical personnel. O'Kasey Aff., Ex 123. On March 9, 2005, plaintiff received a "letter of discipline" regarding the email communication to GOBHI, which stated, "Your decision to directly contact outside agencies to voice your concern over the honesty, integrity, competency and management style of your supervisor is clearly a blatant act of insubordination." O'Kasey Aff., Ex 124. Plaintiff was suspended without pay from her job for two and one-half days.

Plaintiff believed that the suspension was related to her requests for accommodation in connection with her back injury. Plaintiff states that she overheard Luxton say to a co-worker on March 3, 2005, that Luxton was going to find a way to get rid of plaintiff by April 1, 2005, and require

plaintiff to drive five days a week to Pendleton. Plaintiff states that Luxton telephoned plaintiff that night to tell her that she would be required to drive to Pendleton five days a week, no excuses. Plaintiff believes that the letter of suspension was "another step along the path to get rid of me." O'Kasey Aff., Rood Dep., at 229. The County had no written policy that permitted discrimination against an employee based on the employee's exercise of First Amendment rights. However, plaintiff asserts that the County had a custom and an unwritten policy regarding the exercise of those rights. Plaintiff also alleges that Luxton was verbally abusive and discriminatory regarding plaintiff's requests for accommodation and leave.

On March 1, 2005, plaintiff received a letter stating that as of April 1, 2005, Lifeways, Inc. would be taking over Umatilla County Mental Health and that her position was being transferred to Lifeways. O'Kasey Aff., Ex 122. In August, 2004, Umatilla County Mental Health services to GOBHI were terminated and the Mental Health Department was decertified pending transition to a qualified provider.

Plaintiff resigned her position with Umatilla County on March 15, 2005. She alleges that she was constructively discharged as a result of the hostile work environment created by Luxton's behavior, denial of her requests for leave, and the exercise of her First Amendment rights.

## MOTIONS TO STRIKE

Defendants move to strike the following evidence submitted by plaintiff in response to the summary judgment motion:

1. chart notes of Dr. Breland;

2. a Portland Business Journal article dated March 2, 2005, regarding the transfer of mental health services from Umatilla County to Lifeways, Inc.;

3. the testimony of Darla Warner regarding Luxton's treatment of Warner; and

4. a statement made by Administrative Law Judge during the hearing on plaintiff's request for unemployment benefits.

### 1. Dr. Breland's chart notes are admissible.

Defendants move to strike Dr. Breland's chart notes regarding his diagnosis and treatment of plaintiff's back injury. Black Aff., Ex 3. Defendants contend that the chart notes contain statements from sources other than plaintiff and are hearsay. Defendants argue that the notes contain the opinion of Dr. Breland and do not come within any exception to the hearsay rule. Fed.R.Evid. 801.

The chart notes fall within the exceptions to the hearsay rule under Rule 803(6), as records kept in the ordinary course of business, and under Rule 803(4), as "statements made for the purpose of medical diagnosis or treatment." *United States v. Hall*, 419 F.3d 980, 987 (9th Cir.), *cert. denied*, 546 U.S. 1080, 126 S.Ct. 838, 163 L.Ed.2d 714 (2005). Dr. Breland was deposed and questioned by defense counsel regarding his notes. Under these circumstances, the admission of a physician's notes is within the court's discretion. *See Tavernier v. Weyerhaeuser Co.*, 34 F.R.D. 534, 535 (D.Or.1963).

The Motion to Strike plaintiff's Exhibit 3 is denied.

### 2. The Portland Business Journal article is not admissible.

Plaintiff submits an article from the Portland Business Journal dated March 2, 2005, regarding the transfer of mental health services from Umatilla County to Lifeways, Inc. Black Aff., Ex 11. Plaintiff asserts that the article is offered not for the truth of the matter asserted

but to support her contention that she had made statements on matters of public concern in her report to PSRB and in her email to GOBHI.

The statements upon which plaintiff has based her First Amendment claim concern the County's alleged mishandling of client accommodations and "unethical" behavior. The newspaper article does not mention the specific issues raised by plaintiff. The article refers generally to the transfer of mental health services from the County to Lifeways. The County was decertified as mental health provider in August, 2004. Plaintiff's complaints about her supervisor and the alleged violation of her First Amendment rights took place in November, 2004, and March, 2005, well after the decertification. The newspaper article has no direct relevance to plaintiff's complaint because the decertification decision, and the reasons for decertification, occurred before August, 2004. Nor is there any information in the article about the issues raised by plaintiff's complaint. While plaintiff may not be offering the article for the truth of the matters asserted, the article is not relevant to the issues raised by plaintiff in her First Amendment claims.

The Motion to Strike plaintiff's Exhibit 11 is granted.

### 3. The testimony of Darla Warner is admissible.

■ Plaintiff submits the deposition testimony of Darla Warner, former employee of defendants, regarding Luxton's treatment of Warner when Warner requested medical leave. Black Aff., Ex 6, Warner Dep. Defendants move to strike the testimony as inadmissible "other bad act" evidence regarding request for leave. Fed. R.Evid. 404(b). Plaintiff argues that the deposition is admissible to show Luxton's lack of knowledge of FMLA requirements and her willful refusal to recognize plaintiff's FMLA rights.

■ Under Rule 404(b), prior bad acts are generally admissible except when offered only to prove a propensity to act in a similar fashion. *United States v. Verduzco,* 373 F.3d 1022, 1026–28 (9th Cir. 2004). However, Warner testified that she had no family medical leave time left. Thus, Warner's testimony regarding request for leave is not relevant to plaintiff's FMLA claim because Warner's testimony does not address denial of medical leave to which she was entitled, or Luxton's knowledge of the FMLA. Rather, Warner's testimony is about Luxton's alleged bad treatment of her. Defendants have also submitted excerpts of Warner's deposition regarding Luxton's treatment of her. O'Kasey Aff., Warner Dep., at 18. This testimony refers to the same conduct described in the testimony that defendants move to strike. Under the circumstances, defendants cannot complain about the proffered evidence.

The Motion to Strike the deposition of Darla Warner is denied.

### 4. The transcript of plaintiff's unemployment benefits hearing is admissible.

■ Plaintiff offers parts of the transcript of a hearing on her unemployment benefits. Black Aff., Ex 4. Defendants objects to portions of the transcript containing the summary of plaintiff's testimony by the Administrative Law Judge (ALJ). Defendants contend that this portion of the transcript is hearsay.

The ALJ summarized the testimony of plaintiff as he understood it. Plaintiff does not offer the ALJ's statements to prove the truth of the matters asserted. Rather, the transcript is a summary by the ALJ of how plaintiff testified at the unemployment hearing. The portion of the transcript submitted do not reveal whether the ALJ either accepted or rejected the facts as he

summarized them. He continually referred to the statements as plaintiff's testimony. This is not hearsay. Fed.R.Evid. 801.

Defendants' Motion to Exclude Portion of plaintiff's Exhibit 4 is denied.

## MOTION FOR SUMMARY JUDGMENT

### I. STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir.1987). The court should resolve reasonable doubts about the existence of an issue of material fact against the moving party. *Id.* at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–31.

### II. DISCUSSION

#### A. Plaintiff's claims for violation of First Amendment rights.

The controlling authority regarding a complaint filed by a government employee alleging violation of the employee's First Amendment rights is *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). In *Garcetti*, Ceballos, a deputy district attorney, filed a 42 U.S.C. § 1983 complaint against the county and his supervisors in the district attorney's office. Ceballos alleged that he suffered adverse employment actions because he had written a memorandum recommending dismissal of a case based upon governmental misconduct. Ceballos claimed that his written memorandum was protected speech. The Supreme Court did not agree. The Court held that when a government employee makes statements involving his official duties, those statements are not protected by the First Amendment. The Court held the First Amendment does not prohibit managerial discipline based on an employee's statements made pursuant to official responsibilities. *Id.* at 1962.

Plaintiff alleges in her complaint that her First Amendment rights were violated when she was disciplined after reporting to the PSRB in November, 2004, and after sending her email to GOBHI in March, 2005. Plaintiff received a "letter of concern" in January, 2005, and a "letter of discipline" in March, 2005. Plaintiff was suspended for two and one half days in March, 2005.

#### 1. Plaintiff's First Amendment claim based upon PSRB report.

Plaintiff admits that the report made to the PSRB in November, 2004, was made pursuant to her job duties as a PSRB case manager. In her response to defendants' motion for summary judgment, plaintiff concedes that her claim based upon the report to PSRB is no longer viable based upon the Supreme Court's decision in *Garcetti*.

Defendants' Motion for Summary Judgment should be granted with regard to this First Amendment claim.

#### 2. Plaintiff's First Amendment claim based on the email to GOBHI.

Defendants characterize plaintiff's email to GOBHI as a complaint about Luxton and an attempt to prevent Luxton from

becoming plaintiff's supervisor after the transfer of mental health service from the County to Lifeways. Defendant argues that the email to GOBHI involved a personal employment dispute and did not regard a matter of public concern. Plaintiff contends that her email to GOBHI addressed a matter of public concern regarding County procedures, practices, and ethics, and was not merely an employee's complaint about her supervisor.

The email to GOBHI began: "I need to talk to you about a concern I have regarding my supervisor, Beth Luxton." The email included plaintiff's criticism and complaints about Luxton's supervisory decisions regarding "transitioning" clients from one case manager to another. Plaintiff's complaints about Luxton also referred to Luxton's "unprofessionalism and negativity." Plaintiff directed her complaints to DeAnn Carr at GOBHI, a person plaintiff considered a "caring person who might be able to help." Plaintiff's email does not refer to the change of delivery of mental health services from the County to Lifeways. There are no general statements criticizing the policies or procedures of the County other than as seeing her "*supervisor's* approach as detrimental." O'Kasey Aff., Ex. 123 (emphasis added). According to the "letter of discipline" issued to plaintiff by Luxton and Carolyn Mason, Deputy Director of Health and Human Services, the County was suspending plaintiff for two and one half days because plaintiff's complaint to GOBHI about her supervisor was a "blatant act of insubordination." O'Kasey Aff., Ex 124. Plaintiff admits that one purpose of her email to Carr was to prevent Luxton from becoming a supervisor at Lifeways. O'Kasey Aff., Rood Dep. at 191.

█ While plaintiff's email to Carr presents a closer case than her report to PSRB, under *Garcetti*, the email cannot be considered protected speech. The *Garcet-*

*ti* analysis includes two factors: first, whether the employee spoke as a citizen on a matter of public concern, and, second, whether the managerial discipline was justified based on the employee's expressions made pursuant to official responsibilities. *Garcetti*, 126 S.Ct. at 1959–61.

Plaintiff argues that her email to Carr addressed matters of public concern. She points to GOBHI's decertification of County mental health services, arguing that she raised issues in her email to Carr connected to the decertification and transfer of services to Lifeways. Plaintiff characterizes the email as addressing concerns about the mental health practices and procedures as well as management or operational decisions. She argues that the email addresses ethical violations and complaints of mental health clients.

Plaintiff's email does not mention the transfer of mental health services from Umatilla County to Lifeways. Furthermore, when plaintiff sent the email, the decertification of the County and transfer to Lifeways had already occurred. Plaintiff's email was written to complain about Luxton's supervision, and was specifically directed to issues regarding Luxton. While the citizens of the County may have been interested in the transfer of mental health services to Lifeways, plaintiff's email to GOBHI was, as plaintiff admits, an attempt to prevent Luxton from becoming a supervisor for Lifeways.

Even if the email to Carr could arguably be construed as addressing matters of public concern, it is not protected speech under the second factor considered in *Garcetti*. Plaintiff's email addresses matters of concern about her supervisor's approach to client treatment and her supervisor's management style and "power/control leadership." Plaintiff's statements to GOBHI, the oversight agency for mental health services, were made pursuant to her

duties as a mental health professional, not as a citizen, for purposes of First Amendment protection. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 126 S.Ct. at 1961. The disciplinary action taken as a result of plaintiff's email to Carr did not violate plaintiff's First Amendment rights.

Defendants' Motion for Summary Judgment on the 42 U.S.C. § 1983 claims based upon the First Amendment should be granted.

### B. Plaintiff's Americans with Disabilities Act claim.

### 1. Legal Standards

 The Ninth Circuit has set a high standard for granting summary judgment in cases involving employment discrimination. "[W]e require very little evidence to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the fact-finder upon a full record." *Schnidrig v. Columbia Mach., Inc.* 80 F.3d 1406, 1410 (9th Cir. 1996) (citations and quotation marks omitted).

The Americans with Disabilities Act provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, condition, and privileges of employment." 42 U.S.C. § 12112(a). Such discrimination includes the failure to reasonably accommodate "the known physical or mental limita-

tions of an otherwise qualified individual." *Id.* § 12112(b)(5)(a).

 To establish a prima facie case of employment discrimination under the ADA, the plaintiff must prove three elements: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff is a qualified individual able to perform the essential functions of the job, with reasonable accommodations; and (3) the plaintiff suffered an adverse employment action because of her disability. *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir.2003) (per curiam); *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.1999).

The ADA defines a "disability" is defined as "(A) A physical or mental impairment that substantially limits one or more of the individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual may prove disability under any one of these three definitions. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1153 (9th Cir.1997).

 As defendants correctly point out, not every impairment is a disability. The impairment must substantially limit a major life activity. *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 195–98, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning," as well as "working." 29 C.F.R. § 1630.2(i). An activity is "substantially limited" when a person cannot perform the activity that an average person in the general population could perform or faces significant restrictions in the "condition, manner, or duration under which the individual can ... perform [the] activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii), (j)(2).

■ Plaintiff cannot rely solely on a medical diagnosis to support her claim that she suffered from a disability under the ADA. She must also offer "evidence that the extent of the limitation caused by [the] impairment in terms of [her] own experience is substantial." *Toyota Motor Mfg.*, 534 U.S. at 198, 122 S.Ct. 681 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). The evidence must focus on the effect of the impairment on plaintiff's daily life, not just on her ability to perform a specific job. *Id.* at 200–01, 122 S.Ct. 681. The Supreme Court has rejected the notion that "the question of whether an impairment constitutes a disability is to be answered only by analyzing the effect of the impairment in the workplace." *Id.* at 201, 122 S.Ct. 681. The court must consider evidence that an individual can do household chores and tend to personal hygiene, which are the types of manual tasks of central importance to most people's daily lives. *Id.*

■ Defendants contend that the question of whether an impairment exists is a question of law for the court, citing *Bristol v. Board of County Commissioners of County of Clear Creek*, 281 F.3d 1148, 1156 (10th Cir.), *vacated in part on other grounds*, 312 F.3d 1213 (10th Cir.2002) (en banc). However, in the Ninth Circuit, a plaintiff's testimony may be sufficient to show a genuine issue of material fact regarding the impairment of a major life activity. *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1058 (9th Cir.2005).

## 2. Plaintiff's Impairments.

■ There appears to be no dispute that plaintiff was a qualified individual able to perform the essential functions of her job as a mental health counselor. The County contends that plaintiff was not disabled within the meaning of the ADA because she had no impairment. The County

also argues that even if plaintiff had an impairment, no major life activity was affected by the impairment. The County contends that because plaintiff was not disabled, she cannot prevail on her claims for failure to accommodate and hostile work environment based upon her disability.

Plaintiff contends that she suffered an injury to her back as a result of a job-related motor vehicle accident in September, 2004. She argues that this is an impairment that limited one or more major life activities. The issue on summary judgment is whether plaintiff has submitted sufficient proof of an actual disability to survive the motion. The court concludes that she has.

The County contends that the only activity affected by her back injury was driving and that this cannot be considered a "major life activity" under the ADA. However, restricted driving was not the only physical limitation that plaintiff allegedly suffered because of her back injury. Plaintiff has submitted evidence that her treating physician had diagnosed lumbosacral sacroiliac spondylosis, herniated disc, and degenerative disc disease. Dr. Breland prescribed physical therapy to relieve plaintiff's symptoms. Dr. Breland considered plaintiff's back condition to be permanent because she had "mechanical damage." Black Aff., Breland Dep. at 28. Plaintiff has submitted evidence that she was limited in activities such as standing, lifting, walking, as well as driving. Rood Affidavit. She states that for at least five months, she was unable to get in and out of the bathtub unassisted, had difficulty sleeping, and suffered from bladder incontinence two to three times a week. Plaintiff's testimony is sufficient to establish a genuine issue of material fact regarding impairment of major life activities.

### 3. Plaintiff's Requests for Accommodation

■ The County contends that even if plaintiff were to be considered disabled under the ADA, the County complied with plaintiff's requests for accommodation. The County argues that the only accommodation plaintiff requested was that she be allowed to limit her trips from Milton–Freewater to Pendleton to no more than twice a week. The County contends that from January, 2005 through March 16, 2005, plaintiff drove to Pendleton only two times a week and that the County accommodated this request. However, plaintiff testified that she also requested that she be allowed to participate in daily meetings by telephone conference call, and that she have regular time off for physical therapy. O'Kasey Aff., Rood Dep. at 141. Plaintiff also testified that she would be required to drive to Pendleton from Milton–Freewater five days a week and that her request for accommodation would not be honored. O'Kasey Aff., Rood Dep. at 228–29.

Plaintiff has presented sufficient evidence to establish a genuine issue of material fact regarding whether the County denied her requests for reasonable accommodation.

### 4. Hostile Work Environment

■ Defendant correctly points out that the Ninth Circuit has not recognized a hostile work environment claim under the ADA and has declined to decide whether such a claim exists. *Brown v. City of Tucson,* 336 F.3d 1181, 1190 (9th Cir.2003). However, as this court has pointed out on a number of occasions, other courts have acknowledged the possibility of such a claim, *see Simoneau v. Nike, Inc.,* 2006 WL 977302, at *5 (D.Or.2006); *Mitchell v. Tri–County Metropolitan Transportation District,* 2005 WL 3447941, at *7 (D.Or. 2005), and this court has held that the ADA permits a claim for hostile work envi-

ronment based on a plaintiff's disability. *Bergin v. North Clackamas Sch. Dist.,* 2005 WL 66069, at *22 (D.Or.2005) (citing *George v. City of Newberg,* CV 03–180, slip op. at 23–25 (D.Or. Feb. 11, 2004)). A hostile work environment claim under the ADA would be governed by the same legal standards as hostile work environment claim under Title VII. *Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 666 (3rd Cir.1999). To establish a prima facie case of hostile work environment based upon her disability, plaintiff must show (1) she is a qualified individual with a disability, (2) she was subject to verbal or physical harassment because of her disability, (3) the conduct was unwelcome, and (4) the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working environment. *Id.* at 667. For the court to determine whether the conduct was sufficiently severe or pervasive, plaintiff must prove she subjectively felt the conduct was abusive, and that a reasonable person would also find the conduct was hostile or abusive. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). A court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367.

■ As noted above, there is at least a question of fact whether plaintiff is a qualified individual with a disability. Regarding the remaining elements of plaintiff's *prima facie* case, she contends the following created a hostile work environment: Luxton did not timely return plaintiff's requests for leave to go to physical therapy, if at all, Black Aff., Rood Dep. at 88; Luxton refused to sign plaintiff's leave

slips, O'Kasey Aff., Rood Dep. at 111; Luxton was overheard more than once yelling at plaintiff, O'Kasey Aff., Warner Dep. at 18–19, Black Aff., Cogswell Dep. 13–15; plaintiff was not allowed to participate in staff meetings by telephone, O'Kasey Aff., Rood Dep. at 145, Black Aff., Cogswell Dep. at 23; Cogswell was told not to share information with plaintiff about meetings that plaintiff could not attend, Black Aff., Cogswell Dep. at 24; plaintiff overheard Luxton telling a coworker that Luxton would find a way to get rid of plaintiff by April 1, O'Kasey Aff. Rood Dep. at 228, and that Luxton would require that plaintiff drive to Pendleton five days a week, O'Kasey Aff., Rood Dep. at 229; Luxton called plaintiff in the evening and told her that she would be required to drive to Pendleton five days a week, that Luxton would not take into account the doctor's recommendation, and that plaintiff could go look for another job, O'Kasey Aff., Rood Dep. at 229.

Viewing the evidence in a light most favorable to plaintiff, there is at least a question of fact whether plaintiff suffered conduct unwelcome, abusive, and pervasive enough to create a hostile work environment.

Defendants Motion for Summary Judgment regarding plaintiff's ADA claims should be denied.

## C. Plaintiff's Family Medical Leave Act claims.

### 1. Legal Standards

■ Under the Family Medical Leave Act (FMLA), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by [the Act]." 29 U.S.C § 2615(a)(1). To obtain leave under the FMLA, a qualified employee must give the employer notice of his or her intention to take leave. 29 U.S.C § 2612; 29 C.F.R. § 825.303. The required notice need not be detailed; it need only notify the employer of circumstances suggesting "that the FMLA might apply." *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1130 (9th Cir.2001). In fact, the employee " 'need not expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed [for a qualifying reason].' " *Id.* (quoting 29 C.F.R. § 825.302). It is also unlawful to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the Act. . . ." 29 U.S.C. § 2615(a)(2).

### 2. Denial and Interference with FMLA leave

■ The County argues that plaintiff never requested FMLA leave and that plaintiff received no disciplinary action related to absences that could have been covered by FMLA. However, plaintiff points out correctly that she was not required to specifically request leave under FMLA. Rather, plaintiff presents evidence that she requested time off, both orally and in writing, to go to physical therapy and other appointments for her back injury; that her supervisor either ignored or denied written and oral requests for time off; and that she had to miss physical therapy because her supervisor would not give her the time off. Black Aff., Rood Dep. at 87, O'Kasey Aff., Rood Dep. at 105, 130–32.

The County also argues that plaintiff did not give notice of her intent to take leave. Plaintiff submits evidence that she submitted the form provided by the County to request leave on a number of occasions and that she orally requested leave from her supervisor. The County was on notice of plaintiff's need for qualified leave.

An employer's actions that deter an employee's participation in protected activities are an interference with, or restraint

of, an employee's exercise of her rights under the FMLA. *Bachelder*, 259 F.3d at 1124. There are genuine issues of fact regarding whether the County denied or ignored plaintiff's requests for leave in violation of her FMLA rights.

### 3. Discrimination based on the FMLA

 The County also contends that no discriminatory action or retaliation occurred as a result of plaintiff's request for leave or taking of leave. Plaintiff asserts that the County discriminated against her because she exercised her FMLA rights and that this resulted in her constructive discharge. However, I see no evidence in the record presented that the County took any adverse actions against plaintiff because of her requests for leave, other than denying or ignoring the requests. Allegations of discrimination based upon negative consequences suffered by an employee for exercising FMLA rights are not the same as interference with those rights. While there is a question of fact whether the County interfered with plaintiff's FMLA rights, nothing in the record suggests that plaintiff suffered negative consequences *because of* her exercise or attempt to exercise her leave rights. *Bachelder*, 259 F.3d at 1124.

Defendants' Motion for Summary Judgment as to plaintiff's FMLA claims should be denied in part and granted in part.

### CONCLUSION

Defendants' Motion for Summary Judgment (# 27) should be granted in part and denied in part. Defendants' Motion to Strike (# 38) is granted in part and denied in part.

### SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due by September 14, 2007. If no objections are filed, review of the Findings and Recommendation will be under advisement on that date. If objections are filed, a response to the objections is due fourteen days after objections are filed.