Rick SUMMERS, Plaintiff–Appellant,

v.

A. TEICHERT & SON, INC., a California corporation, Defendant–Appellee.

No. 96–15690.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1997.

Decided Oct. 28, 1997.

Timothy M. Smith and Evan Eickmeyer, McKinley & Smith, Sacramento, California, for plaintiff-appellant.

Franklin G. Gumpert, Barkett, Gumpert & Reiner, Sacramento, California, for defendant-appellee.

Before: HUG, Chief Judge, CHOY and HAWKINS, Circuit Judges.

CHOY, Circuit Judge:

Plaintiff-appellant Rick Summers appeals the summary judgment granted in favor of defendant-appellee A. Teichert & Son, Inc. The district court found that there are no triable issues of fact as to whether Summers is a qualified person with a disability under the Americans with Disabilities Act, and that in any event, any failure on the part of Teichert to accommodate Summers was justified by business necessity. We have jurisdiction under 28 U.S.C. § 1291. We affirm, although on a different ground from those upon which the district court based its decision.

## Factual and Procedural History

Plaintiff-appellant Rick Summers ("Summers") was hired as a truck driver for defendant-appellee A. Teichert & Son, Inc. ("Teichert") in July 1987. Summers' primary job was to drive a flatrack truck. In September 1992, Summers was seriously injured in an accident while driving one of Teichert's trucks. As a result of the accident, Summers was hospitalized for eight days and had to undergo a colostomy. Several months after the accident, Summers underwent a second surgery to reverse the colostomy.

Summers was unable to work for a year because of his injuries. In September 1993, Summers was able to return to any job with Teichert, except driving off-road equipment and working as a construction worker. Accordingly, Summers notified Teichert in September 1993 that he was ready to come back to work. In October 1993, a dispatcher telephoned Summers and asked him to come to work the next day.

For a three-week period in the fall of 1993, Summers worked for Teichert driving a flatrack truck. During the winter of 1993, Teichert experienced the usual winter shutdown due to inclement weather. In late January or early February 1994, Summers came into Teichert's work yard for three weeks without receiving any work. Summers complained to Dan Whitten, one of Teichert's dispatchers, who told Summers that there was no work available.

In May 1994, Summers was assigned to drive a water truck. Water trucks must be driven over rough terrain, often bouncing over dirt mounds. Summers aggravated his lower back condition by driving the water truck. At the end of the day, Summers telephoned his supervisor Mike Queipo and, in tears from the pain, informed Queipo that he did not want to drive a water truck again. The next day, Summers felt that he was physically able to work, though not as a water truck driver.

Between May 1994 and September 1995 Summers was not called in to work, nor was he told that work was available. Summers did not call Teichert and tell the dispatchers that he was able to work, nor did he go to the yard to wait for work.[1] Whitten and Queipo sent Summers a disability form after the water truck incident in May 1994 and never heard from Summers.

Summers is a member of the Teamsters union. As such, he is bound by a collective bargaining agreement. Under this agreement, drivers with seniority (those hired before a certain date in 1986) must be given work assignments before drivers without seniority are given the opportunity to work. Summers is a non-seniority driver, because he was hired in 1987.

The exact procedure by which non-seniority drivers are assigned work by Teichert's dispatchers is unclear from the record. Summers claims that, if work were available for non-seniority employees, they were usual-

---

1. Summers actively sought other jobs during this time.

ly telephoned the night before by one of Teichert's dispatchers and told to come in to work the following day. Teichert claims that occasionally, non-seniority employees would be telephoned the night before, but not very often, because if the driver showed up for work but no work was in fact available, Teichert would have to pay the driver a "show up" fee. Teichert says that therefore non-seniority employees would generally come to the workyard on their own in the morning, without being called, with the hope of being assigned available work. Mike Queipo, one of Teichert's dispatchers, stated that he would telephone a driver when work became available "providing there is not somebody already at our immediate disposal in the office to grab." Dan Whitten, the other dispatcher, stated that "on occasion" he would telephone a driver the night before and ask him to come in. However, "[g]enerally, they [the drivers] will show up in the yard. They'll come in . . . ."

Teichert hired Dan Young and Steve Farrell, both flatrack drivers, after Summers. Both Young and Farrell worked 1,800 hours or more in 1994, whereas Summers worked only 8.5 hours for Teichert in 1994. Teichert worked Young full-time after May of 1994, driving both water and flatrack trucks.

Summers returned to work for Teichert as a flatrack driver in September 1995, and has worked for Teichert consistently since that date. According to Summers, Teichert's dispatchers call him when work is available.

Summers's claim is for the two-year period between August 24, 1993 and September 1995. The district court granted Teichert's motion for summary judgment.

## Standard of Review

■■■ This court reviews a grant of summary judgment de novo. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). The court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Id.* The court

must not weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue for trial. *Id.* at 1131. The district court's grant of summary judgment may be affirmed if it is supported by any ground in the record, whether or not the district court relied upon that ground. *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 860 n. 17 (9th Cir.1995).

■■■ According to Fed.R.Civ.P. 56(e), in response to a properly supported motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." The inquiry performed by the trial court is whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For an issue to be "genuine," there must be evidence such that a reasonable jury could reach a verdict in favor of the nonmoving party. *Id.* at 248, 106 S.Ct. at 2511. Therefore, a mere "scintilla" of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some "significant probative evidence tending to support the complaint." *Id.* at 252, 249, 106 S.Ct. at 2510, 2512. Summary judgment may be granted if "the evidence is merely colorable . . . or is not significantly probative." *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288 (9th Cir.1987).

## Background Law

According to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), an employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[2] A "qualified individual with a disability" is a person "with a disability who,

---

**2.** The term "discriminate" in the context of this statute refers to "limiting, segregating, or classifying a[n] . . . employee in a way that adversely

affects the opportunities or status of such . . . employee because of the disability of such . . . employee." 42 U.S.C. § 12112(b)(1).

with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). In the context of the ADA, the term "disability" means: 1) "a physical or mental impairment that substantially limits one or more of the major life activities" of the person; 2) having a "record" of a physical or mental impairment that substantially limits one· or more of the major life activities of the person; or 3) "being regarded as having" a physical or mental impairment that substantially limits one or more of the person's major life activities. 42 U.S.C. § 12102(2).

An employer must make "reasonable accommodation to the known physical ... limitations of an otherwise qualified ... employee with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). A reasonable accommodation is one that would "enable the [employer's] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii).

### Analysis

Summers correctly points out that the district court failed to properly apply the relevant substantive law. In determining whether Summers was a qualified individual with a disability, the district court incorrectly assumed that Summers had to satisfy all three prongs of the disability definition in order to be a qualified individual with a disability. The district court stated:

> Since plaintiff has failed to demonstrate that he suffers from an impairment which substantially limits a major life function, he has failed to show that he is a qualified individual with a disability under the ADA, and thus has failed to state a prima facie case of discrimination.
>
> *Therefore there is no need to reach the issues as to whether plaintiff established a record of his impairment or whether he*

*was regarded as having an impairment,* and even assuming that plaintiff was a qualified individual with a disability, defendant has asserted the affirmative defense of business necessity.

The definition of disability as used in 42 U.S.C. § 12102(2) is in the disjunctive; a person need fit only one of the three definitions to be disabled for the purposes of the ADA.[3] However, there is no need for a remand to apply the correct test, because we hold that Teichert reasonably accommodated any disability that Summers may have had. Indeed, we need not reach the issue of whether Summers was disabled, because our holding would be the same whether or not Summers had a disability.

The district court found that, in order to accommodate Summers, Teichert would have had to breach the terms of a collective bargaining agreement pertaining to seniority drivers. The district court reasoned that breaching the agreement would have caused Teichert an undue hardship, and that therefore Teichert was unable to accommodate Summers. We express no judgment on whether accommodating Summers would have been an undue hardship for Teichert, because we hold that Teichert did not fail to reasonably accommodate Summers.

Summers has not shown that there is a triable issue of fact as to whether Teichert reasonably accommodated any disability he may have had. Summers did not ask Teichert to allow him to drive a different vehicle after Summers' painful experience driving the water truck in May. After reporting to his supervisor the discomfort and pain that resulted from driving the water truck, Summers did not contact Teichert at all.

Indeed, Teichert did not tell Summers that he had to drive a water truck if he wanted to continue his employment with Teichert. There is no evidence that Teichert refused to allow Summers to drive a truck that he was physically able to drive. In fact, Summers

---

**3.** According to 42 U.S.C. § 12102(2), a "disability" is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

has now resumed working for Teichert, back at his old job driving a flatrack truck.

There is also no evidence that Teichert's conduct towards Summers differed in any way from its conduct towards other non-seniority drivers. Summers has not shown that other non-seniority drivers who did not show up or call in to work were given more or greater opportunities to drive trucks other than water trucks than he was given. The fact that Summers did not come to work, did not call Teichert, was not called by Teichert, and was not given any work by Teichert does not show any failure to accommodate on Teichert's part. In other words, Summers has not shown that there is a triable issue of fact as to whether his lack of work was the result of a failure to accommodate by Teichert. While Summers shows that he did not work for Teichert during the period in question, he does not present material evidence regarding the cause of that lack of work or indicating that the lack of work was attributable to a failure of Teichert to accommodate his purported disability.

Summers presents no evidence showing specific instances in which other non-seniority drivers were telephoned by Teichert and asked to come to work. Summers does provide documentation to the effect that two non-seniority drivers each worked 1800 hours or more in 1994, whereas Summers only worked 8.5 hours for Teichert during that time. However, the evidence presented by Summers does not show whether those drivers came into the yard seeking work or whether they were telephoned ahead of time and asked to come into work.

■ Teichert has presented evidence to the effect that if its dispatchers had been aware of Summers' desire to work after the water truck incident, either through a phone call from Summers or, as was his custom, through Summers' coming to the workyard seeking a position that day, they would have put him on a truck. However, after the water truck incident, Summers neither called Teichert nor came in to work.[4] There is no indication that if Summers had shown up or called in to work, he would have been treated any differently than other non-seniority drivers. We therefore hold that Summers has

not demonstrated a triable issue of fact as to whether Teichert reasonably accommodated his alleged disability.

■ Each party has notified the court of its intention to seek attorneys' fees on appeal, pursuant to 42 U.S.C. § 12205. We have discretion under 42 U.S.C. § 12205 to grant attorney's fees to the prevailing party, which in this case is Teichert. However, attorney's fees should be granted to a defendant in a civil rights action only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Given that standard, we believe that a grant of attorney's fees would be inappropriate in this case.

### Conclusion

Summers has not shown that there is a triable issue of fact as to whether Teichert reasonably accommodated any disability he may have had. The district court's grant of summary judgment in favor of Teichert is therefore AFFIRMED.

---

4. Summers actively sought other employment during this time.