181 Cal.App.4th 1173 (2010)
LES JANKEY et al., Plaintiffs and Appellants,
v.
SONG KOO LEE etc., Defendant and Respondent.
No. A123006.
Court of Appeals of California, First District, Division Four.
February 5, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*1176 Thomas E. Frankovich for Plaintiffs and Appellants.
Livingston Law Firm, Renée Welze Livingston and Jason G. Gong for Defendant and Respondent.

OPINION
RUVOLO, P. J.

I.

INTRODUCTION
Les Jankey (Jankey), a person with a disability who uses a wheelchair for mobility, brought an action against Song Koo Lee (Lee), the owner of K & D Market, a small grocery/liquor store in San Francisco's Mission District. The suit alleges that Lee discriminated against Jankey on the basis of his disability because architectural barriers denied him entry to the market. *1177 Jankey's action sought, among other relief, parallel causes of action for injunctive relief pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; ADA) and the California Disabled Persons Act (Civ. Code, § 54 et seq.; CDPA). The court entered summary judgment on all causes of action for Lee, which is not at issue in this appeal.
Instead, this appeal is from an order awarding Lee his attorney fees in the amount of $118,458 under Civil Code section 55[1] (Section 55), which mandates that the prevailing party in an action to enjoin a violation of disability access requirements "shall be entitled to recover reasonable attorney's fees." (Italics added.) Relying on the Ninth Circuit's decision in Hubbard v. SoBreck, LLC (9th Cir. 2008) 531 F.3d 983 (Hubbard I), opinion amended and superseded on denial of rehearing by Hubbard v. SoBreck, LLC (9th Cir. 2009) 554 F.3d 742 (Hubbard II), Jankey claims that attorney fees were improperly awarded to Lee as a prevailing defendant on Jankey's claim for injunctive relief under Section 55. Hubbard II held that a mandatory award of fees to a prevailing defendant under Section 55 without a showing that the plaintiff's lawsuit was frivolous, unreasonable, or groundless "is inconsistent with, and therefore preempted by, the ADA." (Hubbard II, at p. 744.) We respectfully disagree with the Hubbard II court's preemption analysis, and conclude that attorney fees were properly awarded to Lee as a prevailing defendant under Section 55. We further find that the amount of attorney fees and costs was well within the trial court's discretion. Consequently, we affirm.

II.

FACTS AND PROCEDURAL HISTORY
Jankey and Disability Rights Enforcement Education Services: Helping You Help Others (DREES)[2] brought this lawsuit against Lee doing business as K & D Market, a small independently owned and operated grocery/liquor store that has been in the Mission District for 61 years. Lee does not own the building, but has operated the market since 1985.
*1178 Jankey asserted that Lee violated his rights by "denying plaintiffs and the class of other similarly situated persons with physical disabilities access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, [and] services" offered by the market. Specifically, Jankey alleged that a four-inch step located at the entry of K & D Market was an architectural barrier that prevented him and other wheelchair bound individuals from wheeling directly into the store. Jankey claimed Lee was in violation of (1) the ADA (42 U.S.C. § 12101 et seq.); (2) the CDPA (§ 54 et seq.); (3) the Unruh Civil Rights Act (§ 51 et seq.); and (4) Health and Safety Code section 19955. Among other relief, Jankey's lawsuit sought injunctive relief pursuant to the ADA (42 U.S.C. § 12188(a)(2)), and under Section 55, "to make [the subject place of public accommodation] readily accessible to and usable by persons with disabilities ...."
Lee filed a motion for summary judgment contending that Jankey's claims were deficient because (1) removing the threshold step at the market was not a "readily achievable task" within the meaning of the ADA; (2) Jankey was not denied reasonable access to goods and services; (3) Lee utilized alternative methods to provide goods and services to Jankey which complied with ADA requirements; (4) Jankey's claim under Health and Safety Code section 19955 was not cognizable because the market does not have a public restroom; and (5) DREES lacked standing to prosecute this lawsuit.
The trial court granted summary judgment in Lee's favor on June 12, 2008. The court found that Lee had proved his affirmative defense to all causes of action that because of the regulatory permit process, the removal of the architectural barrier and the installation of a ramp was "contrary to applicable law" and not readily achievable. The court also found that DREES lacked standing to maintain this action. As noted, the correctness of this ruling is not challenged by Jankey in this appeal.
Lee, as the prevailing party, thereafter brought a motion to recover his attorney fees under Section 55. In ruling on the fee motion, the parties below disagreed whether the trial court should apply the Ninth Circuit's decision in Hubbard II, supra, 554 F.3d 742, or the California appellate court's decision in Molski v. Arciero Wine Group (2008) 164 Cal.App.4th 786 [79 Cal.Rptr.3d 574] (Molski). As noted, in Hubbard II, the court used preemption principles to require a prevailing defendant, seeking an award of attorney fees under Section 55, to show that the disabled plaintiff's claims were frivolous, unreasonable, or groundless.[3] (Hubbard II, supra, at pp. 746-747.) In Molski, *1179 the court held that attorney fees were automatically available to a prevailing defendant under Section 55, notwithstanding that the disabled plaintiff's claims could not be characterized as frivolous. (Molski, supra, 164 Cal.App.4th at p. 791.)
Upon considering the parties' arguments, the trial court determined that the Molski court's analysis controlled, and that Lee was entitled to a mandatory award of attorney fees under Section 55. The court made no finding on whether Jankey's lawsuit could be characterized as frivolous. The court awarded Lee $118,458 in attorney fees and $3,544.54 in costs. Judgment was entered on August 28, 2008. Jankey then filed an appeal from the court's award of attorney fees and costs to Lee.

III.

DISCUSSION

A. Standard of Review
Generally, a trial court's determination of whether a party is entitled to an award of attorney fees, and the calculation of such a fee award, are both reviewed for abuse of discretion. (Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 315 [193 Cal.Rptr. 900, 667 P.2d 704]; Ramos v. Countrywide Home Loans, Inc. (2000) 82 Cal.App.4th 615, 621 [98 Cal.Rptr.2d 388].) However, Jankey claims the trial court used the wrong legal standard in granting Lee attorney fees under Section 55. "[A]lthough the normal standard of review regarding an attorney fees award is abuse of discretion, `discretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied.' [Citation.]" (Ramos v. Countrywide Home Loans, Inc., supra, at p. 621.) In determining whether the court used the correct legal standard in awarding attorney fees, de novo review is required. (Harman v. City and County of San Francisco (2006) 136 Cal.App.4th 1279, 1308 [39 Cal.Rptr.3d 589]; Silver v. Boatwright Home Inspection, Inc. (2002) 97 Cal.App.4th 443, 448-449 [118 Cal.Rptr.2d 475].)

B. Analysis
Jankey's argument that Section 55's mandatory fee award provision is preempted by the discretionary standard under the ADA is supported by *1180 the Ninth Circuit's decision in Hubbard II, supra, 554 F.3d 742.[4] The complaint filed by the disabled plaintiffs in Hubbard alleged, among other things, that the defendant restaurant owners violated both the federal ADA and California's CDPA. The court entered judgment for the defendants, finding that the plaintiffs had failed to show that the alleged barriers denied them full and equal enjoyment of the restaurants' services and facilities. (554 F.3d at p. 744.) The defendants then moved for attorney fees under the ADA and Section 55 of the CDPA. (Hubbard II, supra, at p. 744.) The district court concluded that attorney fees were not warranted under the ADA because the plaintiffs' claims for injunctive relief were not frivolous, but awarded the defendants attorney fees under Section 55 of the CDPA, which is mandatory and guarantees attorney fees to a prevailing party. (Hubbard II, supra, at p. 744.) The plaintiffs appealed.
Although the issue of preemption was not raised or ruled on in the district court, the Ninth Circuit reversed and vacated the award of attorney fees to the prevailing defendants under Section 55, because the court believed the attorney fee award was inconsistent with, and thus preempted by, the ADA. (Hubbard II, supra, 554 F.3d at p. 744.) The Hubbard court noted that, while both plaintiffs and defendants may be declared prevailing parties under the ADA, attorney fees may not be awarded to a prevailing defendant under the ADA unless the defendant establishes that the plaintiff's suit was frivolous. (See Summers v. A. Teichert & Son, Inc. (9th Cir. 1997) 127 F.3d 1150, 1154 (Summers) [adopting Civil Rights Act of 1964, Title VII (Title VII), standard in Christiansburg Garment Co. v. EEOC (1978) 434 U.S. 412, 421 [54 L.Ed.2d 648, 98 S.Ct. 694] (Christiansburg), for defendants to recover attorney fees under the ADA].)[5]
The Hubbard court went on to point out that a violation of the ADA constitutes a violation of the CDPA. (See §§ 54, subd. (c), 54.1, subd. (d), 54.2, subd. (b).) (Hubbard II, supra, 554 F.3d at p. 745.) Consequently, the proof required to establish a violation of the CDPA and the ADA is identical, *1181 and "it is impossible to distinguish the fees necessary to defend against the CDPA claim from those expended in defense [of] the ADA claim ...." (554 F.3d at p. 745.) Accordingly, "a grant of fees on the California cause of action is necessarily a grant of fees as to the ADA claim." (Ibid.) Because the ADA bars fees to defendants for nonfrivolous actions, the Hubbard court concluded "preemption principles preclude the imposition of fees on a plaintiff for bringing nonfrivolous claims under state law that parallel claims also filed pursuant to the federal law. [Citation.]" (554 F.3d at p. 745.)
A few days after the Hubbard I opinion was issued, the court in Molski, supra, 164 Cal.App.4th 786, addressed the question of whether Section 55 authorizes a fee award in favor of a prevailing defendant, regardless of whether the plaintiff's claims could be characterized as frivolous. In Molski, the plaintiff filed an action alleging that he encountered barriers to wheelchair access while visiting the defendant winery. After his federal action was dismissed, Molski filed a lawsuit in state court asserting claims for relief under the Unruh Civil Rights Act, the CDPA, Health and Safety Code section 19955, and for injunctive relief under Section 55. (Molski, supra, at p. 789.) The trial court ultimately granted the defendant's motion for judgment on the pleadings. (Id. at p. 790.) The defendant then moved to recover attorney fees as the prevailing party under Section 55 for fees incurred in both the federal and state court proceedings. (Molski, supra, at p. 790.) The trial court awarded defendant its attorney fees for the state court action only. (Ibid.) The plaintiff appealed.
On appeal, the appellate court first found Section 55's mandatory language to be unambiguous authorizing "bilateral fee recovery" for both the prevailing plaintiffs and the prevailing defendants. (Molski, supra, 164 Cal.App.4th at p. 790.) Next, the court determined that the defendant winery was the "prevailing party" because Molski had obtained none of the relief he sought. (Id. at p. 791.)
The court then considered Molski's assertion that, "notwithstanding the plain language of section 55 and the outcome of this litigation," attorney fees should not be assessed against a plaintiff unless the defendant demonstrates that the claims were frivolous. (Molski, supra, 164 Cal.App.4th at p. 791.) The Molski court rejected plaintiff's assertion that the Christiansburg standard (Christiansburg, supra, 434 U.S. at p. 421) should be applied to Section 55 as well. The Molski court noted that Christiansburg involved a case brought under Title VII, not to "access litigation in California state court, where a plaintiff controls the relative risks, burdens and benefits by selecting from among several statutory options." (Molski, supra, at p. 791.) Specifically, *1182 the Molski court noted that, unlike a Title VII plaintiff, a plaintiff prosecuting an access claim in California "has several alternatives under California law" and can seek relief under the Unruh Civil Rights Act, the CDPA, or he or she can file an action under Section 55 for injunctive relief. (Molski, supra, at pp. 791-792.)
The Molski court noted that a plaintiff could seek monetary relief under section 54 of the CDPA or section 51 of the Unruh Civil Rights Act without being exposed to the risk of an adverse judgment for attorney fees. Because fees are only authorized for prevailing plaintiffs, the same is not true when a plaintiff seeks relief under Section 55 to enjoin a technical violation of California's access laws. (Molski, supra, 164 Cal.App.4th at p. 792.) By including a claim for injunctive relief under Section 55, Molski knew that he could be exposed to an adverse fee award, and therefore "ha[d] something to lose if he ... [did] not carefully assess the merits" of his claim. (164 Cal.App.4th at p. 792.) The court concluded that entitling a prevailing defendant to fees on the same basis as a prevailing plaintiff under Section 55, without a finding that the plaintiff's claims were frivolous, does not violate "[t]he spirit of California's statutory scheme." (164 Cal.App.4th at p. 792.) A plaintiff should be held accountable for "the consequences of this scorched-earth strategy" of electing to pursue every available statutory option available to enforce his right of access under California law, thereby "maximiz[ing] the litigation expenses of his adversary." (Ibid.)
In response to the Molski opinion, the Ninth Circuit granted a petition for rehearing in Hubbard I, supra, 531 F.3d 983 and issued an amended opinion. (Hubbard II, supra, 554 F.3d 742.) Although the Ninth Circuit reaffirmed its ultimate conclusion that the defendants' mandatory award of attorney fees under Section 55 was preempted by the ADA, the court acknowledged that Molski upheld an award of attorney fees to a prevailing defendant on a Section 55 claim found not to be frivolous. (Hubbard II, supra, at p. 745.) The Hubbard court went on to note that under Section 55 "[f]ees are not discretionary; they are mandatory.... Given this language, we have no basis for doubting that the California Supreme Court will agree with Molski as to the meaning of Section 55. [Citation.]"[6] (Hubbard II, supra, at p. 745.)
The Molski court had no reason to address the preemption issue Jankey raises because the plaintiff in Molski had voluntarily dismissed his federal claims under the ADA, and the operative complaint contained only state law claims when attorney fees were awarded. (Molski, supra, 164 Cal.App.4th at *1183 p. 789.) Thus, it is unsurprising that the court's opinion in Molski does not contain a word about parallel state and federal claims for injunctive relief, nor does it address whether federal preemption principles preclude giving effect to the provision in Section 55, which automatically grants attorney fees to prevailing defendants.
(1) Procedurally, the case before us is analogous to Hubbard, where the plaintiff made parallel claims for injunctive relief under the ADA and Section 55 of the CDPA, and the defendant prevailed on the ADA claim for the same reasons he prevailed on the CDPA claim.[7] Because the instant case is procedurally identical to Hubbard, and Molski, supra, 164 Cal.App.4th 786 did not directly address this issue, we must decide whether Hubbard's preemption analysis has merit. (Wagner v. Apex Marine Ship Management Corp. (2000) 83 Cal.App.4th 1444, 1451 [100 Cal.Rptr.2d 533] ["`"decisions of the lower federal courts, while persuasive, are not binding on us."'"].)
(2) We start with long-settled preemption principles. "Whether federal law preempts state law is fundamentally a question whether Congress has intended such a result. [Citations.] [¶] The `starting presumption' is that Congress has not so intended. [Citations.] [¶] Preemption of state law by federal law is found in `three circumstances.' [Citations.] [¶] First, there is so-called `express preemption': `Congress can define explicitly the extent to which its enactments pre-empt state law.' [Citations.] [¶] Second, there is so-called `field preemption': `[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.' [Citations.] [¶] Third, there is so-called `conflict preemption': `[S]tate law is pre-empted to the extent that it actually conflicts with federal law.' [Citations.] Such conflict must be `of substance and not merely trivial or insubstantial.' [Citation.] It exists when it is `impossible ... to comply with both state and federal requirements' [citations] or when state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives' underlying federal law [citations]." (Peatros v. Bank of America (2000) 22 Cal.4th 147, 157-158 [91 Cal.Rptr.2d 659, 990 P.2d 539]; see Capital Cities Cable, Inc. v. Crisp (1984) 467 U.S. 691, 698-699 [81 L.Ed.2d 580, 104 S.Ct. 2694].) In determining whether a state statute is preempted by federal law, courts may find preemption only when congressional intent is "`clear and manifest.'" (Spielholz v. Superior Court (2001) 86 Cal.App.4th 1366, 1371-1372 [104 Cal.Rptr.2d 197]; see Medtronic, Inc. v. Lohr (1996) 518 U.S. 470, 485 [135 L.Ed.2d 700, 116 S.Ct. 2240].)
*1184 In considering the different categories of federal preemption, it appears the Hubbard court employed a conflict preemption analysis. According to Hubbard, a violation of the ADA is a violation of the CDPA (§§ 54, subd. (c), 54.1, subd. (d), 54.2, subd. (b)), and it is "impossible to distinguish the fees necessary to defend against the CDPA claim from those expended in defense against the ADA claim ...." (Hubbard II, supra, 554 F.3d at p. 745.) Because the ADA bars attorney fees to defendants for nonfrivolous actions, the Hubbard court believed that the mandatory fee award to a prevailing defendant under Section 55 of the CDPA was inconsistent with and thus preempted by the ADA.
In our view, Hubbard improperly used conflict preemption principles to decide the issue before it, and in applying those principles, erroneously concluded that the ADA and Section 55 were in conflict. Certainly, there is nothing in the ADA which would support Hubbard's conclusion that in enacting the ADA, Congress intended to impose uniform standards for complementary state law remedies. In fact, the ADA's express preemption clause, which is not even mentioned in Hubbard, leads to the opposite conclusion.
(3) The ADA has explicitly defined the extent to which its enactment preempts other laws. The text of that provision provides that "[n]othing in [the ADA] shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State ... that provides greater or equal protection for the rights of individuals with disabilities than are afforded by [the ADA]." (42 U.S.C. § 12201(b).) Accordingly, rather than express an intent to displace state law in the field of disability discrimination, Congress envisioned that a plaintiff will be permitted to pursue state law remedies simultaneously with the remedies provided under the ADA, which may potentially provide the plaintiff with equal or greater relief than he or she may be entitled to under the ADA alone. (See Dichner v. Liberty Travel (1st Cir. 1998) 141 F.3d 24, 32 ["the ADA anticipates that disabled persons will enjoy the full protection of both federal and state antidiscrimination schemes"]; Wood v. County of Alameda (N.D.Cal. 1995) 875 F.Supp. 659, 665 (Wood) ["plaintiffs are free to bring suit under both state statutes and the ADA, to the extent that those state laws are consistent with the accomplishment of the federal purposes stated in the federal law" (original italics)].)
(4) It has been recognized that the express purpose of the ADA's preemption provision is to maximize the options available to plaintiffs by ensuring that the ADA provides a "floor" for a plaintiff's rights and remedies while freeing the states to construct a statutory "ceiling." (Wood, supra, 875 F.Supp. at p. 663.) In California, the Legislature has proclaimed its intent *1185 that California provide more protection to individuals than the ADA: "The law of this state in the area of disabilities provides protections independent from those in the federal [ADA] .... Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections." (Gov. Code, § 12926.1, subd. (a), citation omitted.)
Indeed, a perusal of the array of remedies available under California law leads quickly to the inescapable conclusion that the protections of state law go far beyond the ADA. As noted, the ADA provides only injunctive relief, not money damages. (42 U.S.C. § 12188(a)(2).) In contrast, both the Unruh Civil Rights Act and the CDPA allow a plaintiff who is denied equal access or accommodation to sue for money damages. (§§ 52, 54.3.) The importance of this expansion of remedies was explained by the court in Pickern v. Best Western Timber Cove Lodge Marina (E.D.Cal. 2002) 194 F.Supp.2d 1128: "After the ADA was passed in 1990, the California Disabled Persons Act and the Unruh Civil Rights Act were amended to provide that a violation of the ADA constitutes a violation of their provisions. [Citations.] Thus, a plaintiff whose rights are violated under the ADA may now seek damages under the California statutes ...." (Id. at p. 1131.) More recently, our Supreme Court settled a disagreement among the appellate courts and held that a plaintiff who seeks damages under section 52, claiming the denial of full and equal treatment on the basis of disability in violation of the Unruh Civil Rights Act and the ADA, need not prove intentional discrimination. (Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 665 [94 Cal.Rptr.3d 685, 208 P.3d 623].)
Furthermore, when money damages are sought under both the CDPA and the Unruh Civil Rights Act, the attorney fee provisions offer a unique departure from the ADA's bilateral attorney fee provision. Under the CDPA and the Unruh Civil Rights Act, the prevailing plaintiff is entitled to seek recovery of attorney fees, but a prevailing defendant is not similarly entitled to fees. (See §§ 54.3, 52, subd. (a); Molski, supra, 164 Cal.App.4th at pp. 791-792.)
(5) As noted, unlike the ADA, which makes attorney fee recovery discretionary (42 U.S.C. § 12205), attorney fees are mandatory under Section 55. Consequently, if the plaintiff proves a single violation of a broad range of statutory requirements, of which a violation of the ADA is merely a subset, the plaintiff is guaranteed an attorney fee award. Far from weakening the *1186 rights of plaintiffs, the legislative history reveals that the California Legislature designed Section 55's guaranteed attorney fee provision to promote, and encourage plaintiffs to seek enforcement of California's disability access statutes.[8]
(6) The fact that the Legislature decided to impose a two-way guaranteed fee provision does not put Section 55 in irreconcilable conflict with the ADA or abrogate the scope of the rights available under the ADA in any fashion. Section 55, like other provisions of the CDPA and the Unruh Civil Rights Act, provides greater incentives and rights to a person pursuing a disability access claim in California. The risk that a plaintiff will be liable to a defendant for attorney fees if a Section 55 injunction claim fails is more than offset by the greater rights afforded a plaintiff, including money damages and a guaranteed attorney fee recovery in all instances where the plaintiff prevails.
(7) The Hubbard court also went astray when it failed to look at the CDPA as a whole in measuring it against the ADA's protection, and instead improperly parsed the law. We have found no legal authority requiring each and every element of a multifaceted state remedial act to offer equal or greater benefits under all circumstances over a similar federal law in order to avoid a preemption finding. Rather than dissecting the fee provision as did Hubbard, when Section 55's role and purpose within the CDPA is considered, it represents precisely the kind of state law authorized by 42 United States Code section 12201(b)a law where "the potential available remedies would be greater than those available under the ADA ...." (Appen. to 29 C.F.R. § 1630.1, subds. (b) & (c) (2009), p. 369.)
Lastly, Hubbard failed to acknowledge the point so persuasively made by Molski that, in California, "a plaintiff controls the relative risks, burdens and benefits by selecting among several statutory options," and that by invoking Section 55, Jankey knew he "ha[d] something to lose if he ... [did] not carefully assess the merits" of his claim. (Molski, supra, 164 Cal.App.4th at pp. 791-792.) In this case, Jankey chose to pursue claims for injunctive relief *1187 under both the ADA and Section 55. If his lawsuit had been successful, he certainly would have claimed a mandatory right to attorney fees under Section 55. Nullifying Section 55 to the extent that it guarantees prevailing defendants attorney fees now that Jankey has lost would give him all the benefits of a "scorched-earth" litigation strategy while incurring none of the risks. (Molski, supra, at p. 792.) Moreover, if we accepted Jankey's argument, it would result in giving plaintiffs in disability discrimination litigation an unfair strategic advantage over defendants, who will be subject to Section 55's mandatory attorney fee provision if they lose and the ADA's discretionary attorney fee provision if they win. This result would potentially inject even greater tactical gamesmanship into an area of the law where gamesmanship is already an acute concern. (See generally Molski v. Mandarin Touch Restaurant (C.D.Cal. 2004) 347 F.Supp.2d 860, 863.)[9]
(8) We therefore reject Jankey's claim, based on Hubbard II, supra, 554 F.3d 742, that "[t]he discretionary attorneys' fee provision of the ADA and the mandatory nature of fees under section 55 raise [an irreconcilable] conflict" and that "preemption principles preclude the imposition of fees on [Jankey] unless the trial court was to find that [his] action was frivolous, unreasonable, or groundless." We conclude no such finding was required under Section 55, nor is the statute preempted by the ADA. Accordingly, the trial court properly awarded Lee, as the prevailing party, his attorney fees in this case.

C. Amount of Attorney Fees Award[*]

*1188 IV.

DISPOSITION
(9) The judgment is affirmed. Lee is entitled to his costs and an award of attorney fees on appeal in an amount to be determined in the trial court. (See Cal. Rules of Court, rule 8.278(a)(1); Morcos v. Board of Retirement (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543] ["statutes authorizing attorney fee awards in lower tribunals include attorney fees incurred on appeals of decisions from those lower tribunals."].)
Sepulveda, J., and Rivera, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.C.
[1] All undesignated statutory references are to the Civil Code. Section 55 also provides that "[a]ny person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code, Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code, or Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code may bring an action to enjoin the violation."
[2] DREES is described in Jankey's pleadings as a nonprofit organization "that works with persons with disabilities to empower them to be independent in American society."
[3] For simplicity's sake, we will hereafter use the single term "frivolous" to denote claims that are "frivolous, unreasonable or groundless."
[4] The relevant language regarding preemption in Hubbard I, supra, 531 F.3d 983, and Hubbard II, supra, 554 F.3d 742, is identical. Therefore, for the sake of convenience, our references to Hubbard are to Hubbard II unless otherwise noted.
[5] In prescribing the appropriate criteria for discretionary decisions whether to award attorney fees to a prevailing defendant under the ADA, the Ninth Circuit in Summers applied the test established for Title VII employment discrimination cases in Christiansburg, supra, 434 U.S. 412. That is, where the prevailing party in an ADA action is the defendant, the court may award fees only if the plaintiff's action is found to be "frivolous, unreasonable, or without foundation." (Christiansburg, at p. 421; see Summers, supra, 127 F.3d at p. 1154.) No argument is made in this appeal that Summers was incorrect by using the Christiansburg standard in an ADA context.
[6] The California Supreme Court denied review of the Molski decision on October 16, 2008 (S165946).
[7] However, we point out one difference in Hubbard and the instant case. While the prevailing defendants in Hubbard moved for attorney fees and costs pursuant to both the ADA and Section 55 of the CDPA (Hubbard II, supra, 554 F.3d at p. 744), Lee sought attorney fees under Section 55 only.
[8] In working to pass Assembly Bill No. 2471 during the 1973-1974 legislative session, which became Section 55, a proponent of the bill wrote: "The disabled in the State need the courts to back them up in their efforts to move freely in their community. However, attorneys and courts cost money and according to Federal and State statistics, the disabled are among the most financially disadvantaged. For this reason, AB2471 is needed to allow the disabled to bring action against those builders in violation of the law without the prohibitive burden of attorney's fees and court costs. This would put the disabled in the State on a more equal footing with their able-bodied peers." (Saralea Altman, Legis. Chairwoman, Cal. Coordinating Council, letter to Assemblyman Charles Warren, May 30, 1973.)
[9] This concern is hardly speculative. The similarity between the complaints filed in Molski and the instant case goes beyond mere coincidence. Both Jankey and Molski are represented by the same attorneyThomas Frankovich. As one court has noted, complaints filed by Frankovich on behalf of the plaintiffs invariably combine an ADA claim with claims under the Unruh Civil Rights Act, the CDPA, and the Health and Safety Code. (Molski v. Mandarin Touch Restaurant (C.D.Cal. 2005) 359 F.Supp.2d 924, 926.) Indeed, the court in that case found that all 223 of the Frankovich complaints it examined combined roughly the same causes of action. (Ibid.)

Moreover, as the Molski opinion noted, Frankovich is subject to a prefiling order in federal court. (Molski, supra, 164 Cal.App.4th at p. 789; see Molski v. Evergreen Dynasty Corp. (9th Cir. 2007) 500 F.3d 1047, 1064 ["district court's pre-filing sanction is sufficiently tailored to combat the Frankovich Group's practice of repetitive litigation based on false allegations of injury"].) It noted further that while 156 such lawsuits were filed on behalf of Molski, another 40 were filed on behalf of Jankey or Patrick Connally, the president of DREES. (Molski v. Mandarin Touch Restaurant, supra, 359 F.Supp.2d at p. 926.)
[*] See footnote, ante, page 1173.